IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ROBERT FRANKLIN AND SHANNON
O'QUINN FRANKLIN, EACH INDIVIDUALLY
AND EACH ON BEHALF OF LARRY D. MAYS,
A MINOR CHILD                                                        **PLAINTIFFS**

V.                                                       CIVIL ACTION NO. 5:15CV120

NORTH CENTRAL NARCOTICS TASK FORCE;
CLAIBORNE COUNTY, MISSISSIPPI; MARIO GRADY,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES;
CORY WEATHERSPOON, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES; SCOTT STEWART,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES;
WILLIAM NEVELS, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES; MICHAEL WELLS,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES;
AND DOE DEFENDANTS 1-10                                              **DEFENDANTS**

### Memorandum in Support of Defendants'
### Partial Motion to Dismiss Plaintiffs' Complaint

COME NOW Defendants Claiborne County, Mississippi; Mario Grady, in his official

and individual capacities; Cory Weatherspoon, in his official and individual capacities; and

Michael Wells, in his official and individual capacities (collectively "Defendants"), and file this

Memorandum in Support of their Motion to Dismiss Plaintiffs' Complaint for failure to state a

claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof,

Defendants would show unto the Court the following.

## I.       INTRODUCTION

Numerous of the counts set forth in Plaintiffs' Complaint fail to set forth a plausible

claim for relief. Plaintiff has not plead facts capable of satisfying the municipal liability analysis

necessary to establish liability against the County for Section 1983 claims. Likewise, Plaintiffs'

alleged state law claims are almost all barred as to all Defendants by the Mississippi Tort Claims Act and by Plaintiffs' failure to plead sufficient facts which show Plaintiff's entitlement to relief.

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiffs allege that on March 20, 2014, Plaintiff Larry D. Mays was "physically accosted by members of the North Central Narcotics Task Force and the Claiborne County Sheriff's Department at his home in Port Gibson, Mississippi." [Complaint at ¶ 15] Specifically, Plaintiffs allege that "individuals including Mario Grady, Cory Weatherspoon, Scott Stewart, William Nevels, and Michael Wells came into [Plaintiffs'] home, snatched Larry D. Mays out of his bed, threw him to the ground, put their feet/knees in his back and held him at gunpoint." *Id.* Plaintiffs allege that Larry D. Mays suffered a seizure immediately after the Task Force left his home, and that he has suffered seizures " at an increased rate since the time of this incident." *Id.* at ¶ 16.  Plaintiffs include Mays' parents, who allege that the "emotional and psychological trauma caused by the injuries sustained by Larry D. Mays directly and proximately affects all of the Plaintiffs." *Id.* at ¶ 21.

Plaintiffs initiated this suit by filing their Complaint on June 1, 2015, in the Circuit Court of Claiborne County, Mississippi.  Defendants Claiborne County and Michael Wells were served and filed timely Answers dated August 7, 2015, and August 14, 2015, respectively.  Plaintiffs sought an extension of time to serve the remaining individual defendants, which was granted by the state court.  Plaintiff then served Cory Weatherspoon and Mario Grady, who timely removed the litigation to this Court on December 11, 2015.  Defendants Claiborne County, Mississippi, and Michael Wells joined in the removal.  Defendant William Nevels also filed a joinder in the removal.  Upon information and belief, Defendant Scott Stewart has not yet been served.

### III.   <u>LEGAL STANDARD</u>

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must state a plausible claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2008).  To state such a claim, a plaintiff's complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, plaintiffs must allege facts sufficient to "nudge [] their claims across the line from conceivable to plausible." *Id.* at 570.  Under this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[d]oes not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions[]." *Iqbal*, 129 S.Ct. at 1949-50.  If, as here, the allegations of a complaint do not state plausible claims supported by specific facts, dismissal is proper.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant is entitled to have a case filed against it dismissed if the plaintiff "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A dismissal pursuant to Rule 12(b)(6) is "appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *True v. Robles*, 571 F.3d 412 (5th Cir. 2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570) (2007)).  Basic to this premise is the notion that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is deemed to be plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556).  A plaintiff is required to plead more than the mere possibility that

the defendant acted unlawfully in order to survive a motion to dismiss.  *Id.*  Instead, a plaintiff

must plead facts that are sufficient enough to state a plausible claim for relief in order to survive

a motion to dismiss.  *Id.* at 1949.

Rule 12(b)(6) serves the tantamount purpose of "allowing the court to eliminate actions

that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the

burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed

Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing *Neitzke v. Williams*, 490 U.S. 319,

326-27 (1989)).

As discussed below, many of Plaintiffs' claims are "fatally flawed" and "destined

to fail" and, therefore, must be dismissed with prejudice.

## IV.    LAW AND ARGUMENT

**A.    Background and Framework of the Mississippi Tort Claims Act ("MTCA")**

In Mississippi, every state law tort claim asserted against a governmental entity is guided

by the MTCA.  *See City of Jackson v. Sutton*, 797 So. 2d 977, 980 (Miss. 2001); *Lang v. Bay St.

Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1236 (Miss. 1999).  Particularly, the State of

Mississippi and its political subdivisions enjoy absolute sovereign immunity from suit at law or

in equity arising out of any wrongful or tortious conduct of the governmental entity or its

employees.  Miss. Code Ann. § 11-46-3.  The MTCA waives the sovereign immunity of

governmental entities only in certain circumstances—but retains immunity in others—and

provides the exclusive means through which an action may be brought against a governmental

entity as a result of such waiver.  *Id.* at §§ 11-46-5, 11-46-7, 11-46-9; *Watts v. Tang*, 828 So. 2d

785, 791 (Miss. 2002). The MTCA requires plaintiffs to advance state-law tort claims against the employees of a governmental entity, in their official, representative capacities:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.

Miss. Code Ann. § 11-46-7 (2). When a suit is properly maintained under the MTCA, it proceeds like any other action, *id.* at § 11-46-11(1), and is subject to the same procedural laws and rules as any other action. As explained below, the majority of Plaintiffs' state law claims require dismissal with prejudice.

**B.     Under the municipal liability doctrine, Defendant Claiborne County cannot be vicariously liable for the actions of its individual defendant employees with respect to §1983 claims.**

As to municipalities and other political subdivisions, like counties, the theory of respondeat superior does not apply in § 1983 actions, despite Plaintiffs' assertion to the contrary. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339 (5th Cir. 1989). Like municipalities, counties cannot be sued under § 1983 unless a plaintiff sufficiently demonstrates injury from an official policy or custom, as distinguished from mere tortious conduct. *See, e.g., Beattie v. Madison County School Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 2001).[1] In order to properly assert municipal liability under § 1983, Plaintiff must allege "(1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Doe v. Covington County Sch. Dist.*, 675 F.3d 849, 867-68 (5th Cir. 2012). Here, Plaintiffs have failed to allege facts to plausibly suggest that these elements can be met.

---

[1] "Under § 1983, Beattie may sue a local governing body for monetary, declaratory, or injunctive relief if the challenged action implements or executes a policy officially adopted by that body's officers. "

Plaintiffs' claims brought under § 1983 are legally insufficient because they offer only vague and conclusory allegations.   [Complaint ¶¶ 24-32]   "Only upon a demonstration of a policy or custom to violate the constitution, which is not to be confused with proof of policies supporting tortious conduct, can the municipality be held liable under section 1983." *Brown v. City of Hazlehurst*, 741 So.2d 975, 981 (Miss. Ct. App. 1999).  The court further re-emphasized that a policy or custom must be identified with specificity, stating:

> [A] plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation, or that her injuries resulted from the execution of the official policy or custom.  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Brown*, 741 So.2d at 981.  Absent injuries caused by an illegal custom or policy, a governmental entity is immunized from liability.  *Williams v. Lee County Sheriff's Dept.*, 744 So.2d 286, 298-99 (Miss. 1999).  In the Fifth Circuit, to qualify as a custom or policy, the practice must have occurred for so long, or so frequently, that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).  Here, Plaintiff has not set forth specific facts that demonstrate any long-standing official custom or policy created by the County that violates the constitution.  Plaintiffs' §1983 claims must be dismissed as to Claiborne County with prejudice.

**C.     The Majority of Plaintiffs' State Law Claims Must Be Dismissed.**

In addition to their §1983 claims, Plaintiffs assert a number of state law claims.  As shown below, the majority of those claims must be dismissed.

### 1. Negligent Hiring and Related Allegations

Plaintiffs allege "negligent hiring, retention, supervision, and control," and separately alleges "negligent failure to discipline or take necessary corrective action." [Complaint pp. 7, 1] However, the second claim is duplicative of the first, so these claims will be addressed jointly. *Jordan v. Premier Entertainment Bioloxi, LLC*, 2014 WL 5773762 *5 (S.D. Miss., November 6, 2014) (holding that the exact same two counts, worded exactly the same way, are redundant and should be treated together). This claim is barred by immunity provisions in the Mississippi Tort Claims Act ("MTCA.") To the extent it is not barred, Plaintiffs have failed to plead the facts necessary to create a plausible claim to relief. The claims are impermissibly vague and do not specify which defendants allegedly did any hiring, supervision, etc.

First, the MTCA provides that a governmental entity <u>shall not be liable</u> for, *inter alia*, any claim "[a]rising out of the exercise of discretion in determining . . . <u>the hiring of personnel</u>. . . ." Miss. Code Ann. § 11-46-9(g) (emphasis added). By its plain language and as explained above, this exemption precludes Plaintiffs from holding Defendants liable for discretionary hiring decisions. This claim must, therefore, be dismissed with prejudice.

Second, in addition to § 11-46-9(g), with regard to the failure to hire claim, § 11-46-9(d) provides that a governmental entity shall not be liable for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(d). To determine the applicability of this exemption, court examines "(1) whether the activity involved an element of choice or judgment, and if so; (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives." *City of*

*Jackson v. Powell*, 917 So. 2d 59, 73 (Miss. 2005) (internal quotations and citations omitted). Specifically, the *Powell* Court stated:

> There is no doubt that the choice to employ and the manner of supervision of police officers does affect public policy, and the make-up of the police force inherently affects the social policy of a city. **The manner in which the police department supervises, disciplines and regulates its police officers is a discretionary function of the government and thus the city is immune to suit under § 11-46-9(1)(d).**

*Id.* at 74 (emphasis added).

Any of the Defendants who were required to make decisions regarding the employment, supervision, assignments, training, and retention of officers were undoubtedly exercising a discretionary function that affects public and social policy. The Mississippi Supreme Court has clearly held that "[a] duty is discretionary if it requires [an] official to use her own judgment and discretion in the performance thereof." *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So.2d 1136, 1141 (Miss.1999) (citing *Pearl Pub. Sch. Dist. v. Groner*, 784 So. 2d 911, 914 (Miss. 2001)). Thus, discretionary immunity is appropriate and negligent hiring and related claims must be dismissed with prejudice.

Should this Court somehow overcome the bar created by the MTCA as to Plaintiffs' other state law claims, those claims should nevertheless be dismissed. The claims are too ambiguous to survive this motion to dismiss. Plaintiffs' claims for failure to supervise and failure to train fail to describe to whom these claims apply. Plaintiffs do not specify whom Defendants failed to train or supervise. The Court cannot adequately determine whether a duty was owed without knowing to what or whom these duties should apply.

Further, to the extent these failures (i.e. to train or supervise) fall under the "negligence" umbrella, Plaintiffs have not articulated facts giving rise to a prima facie negligence case. Specifically, they have not alleged facts showing duty, breach, causation, or damages. *Paz v.*

*Brush Engineered Materials, Inc.*, 949 So. 2d 1, 3 (Miss. 2007). As noted above, they do not

identify which Defendant(s) hired, trained, supervised, etc., whom the Defendants should have

trained or supervised, and they have not provided facts showing that a failure to train or

supervise created an actionable breach. Perhaps more importantly, they have not shown that any

alleged breach by the Defendants was the legal cause of his alleged damages. Taken as true, the

facts in Plaintiffs' Complaint do not state a claim for negligence of any type.

### 2.   **Breach of Fiduciary Duty**

Plaintiff's Complaint includes a count titled "Breach of Non-Delegable Fiduciary Duty."

[Complaint ¶¶ 63-64]. The entirety of Plaintiffs' claim is as follows:

> The failure and/or refusal of the Defendants (including agents,
> employees, and/or independent contractors of the aforementioned
> in their official capacities as well as other unknown entities,
> business, parent companies, corporations, and etc.) to prevent the
> injuries sustained by the Plaintiffs, at a time when the same was
> absolutely essential, constituted a breach of a non-delegable and/or
> fiduciary duty owed to the Plaintiffs and other persons similar [sic]
> situated.

Complaint ¶ 64. The allegation must be dismissed as impermissibly vague. Plaintiffs' Complaint

fails to identify any alleged fiduciary duty owed to Plaintiffs, or to specify which Defendants

owed the unidentified duty. Further, Mississippi law does not support the existence of a fiduciary

relationship in this context. Research has not revealed any fiduciary duty owed by law

enforcement in the circumstances alleged by Plaintiffs. Mississippi law is well-settled in that in

order to establish a claim for breach of fiduciary duty, Plaintiffs must first establish a duty.

*Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 758 (Miss. 2004) aff'd, 13 So. 3d 260

(Miss. 2009). Further, Plaintiffs must prove it by clear and convincing evidence. *AmSouth Bank*

*v. Gupta*, 838 So. 2d 205, 216 (Miss. 2002). Plaintiffs have failed to allege a fiduciary

relationship. Additionally, Mississippi law simply does not support a fiduciary relationship or a

breach of fiduciary duty as alleged by Plaintiffs.  As such,  this claim must be dismissed.

### 3.  **"The Common Law Tort of Outrage"**

Plaintiff's assertion of a claim for "the common law tort of outrage" is nothing more than a claim for intentional infliction of emotional distress.  *Jones v. Jackson State Univ.*, No. CIV.A. 3:07CV72DPJ-J, 2008 WL 682411, at *5 (S.D. Miss. Mar. 7, 2008); *Bombardier Capital, Inc. v. Royer Homes of Mississippi, Inc.*, 2006 WL 1328907 *3, fn 2. (S.D. Miss., May 15, 2006).  This claim is barred by the one-year statute of limitations.  *Jones v. Fluor Daniel Serv. Corp.*, 32 So. 3d 417, 422 (Miss. 2010).  Plaintiffs filed their original Complaint on June 1, 2015. [Doc. 1] The alleged events giving rise to the Complaint occurred on March 20, 2014.  [Complaint ¶ 15] Therefore, Plaintiffs' claim for intentional infliction of emotional distress is barred.

### 4.  **Civil Conspiracy**

Plaintiffs allege a state law claim for "civil conspiracy."   [Complaint ¶¶ 74-75] Specifically, Plaintiffs claim that Defendants conspired to "commit and cover up the wrongs complained of herein." *Id.*  This claim must fail as a matter of law.

Plaintiffs have sued the North Central Narcotics Task Force ("Task Force")[2] and Defendants who were allegedly acting with and as part of the Task Force.  Plaintiffs have sued Defendants, whom they allege were acting on behalf of a single entity – the Task Force.   As a result, Plaintiffs' conspiracy claim is barred by the "intracorporate" conspiracy doctrine, which provides that an entity cannot conspire with itself.  Any conspiracy claim involving only one actor fails, and Mississippi applies this doctrine to employees of insurance companies as well as governmental entities.  *See Lady v. Jefferson Pilot Life Ins. Co.*, 241 F. Supp. 2d 655, 662 (S.D.

---

[2] The "North Central Narcotics Task Force" has been named by Plaintiffs as a defendant in the case. However, such a Task Force, formed through interlocal agreement pursuant to Mississippi law, is not a legal entity. For this reason, Plaintiff cannot pursue claims against it. *See Harris v. Jackson County, Mississippi*, 2015 WL 1427412, *1 (March 27, 2015); *see also* Mississippi Office of the Attorney General, Opinion No. 96-0628 (Sept. 20, 1996).

Miss. 2001) ("Mississippi follows the rule that agents and employees of an insurer cannot be held accountable under a theory of conspiracy."); *Moody v. Jefferson Parish School Bd.*, 803 F. Supp. 1158, 1166 (E.D. La. 1992), *aff'd*, 2 F.3d 604 (5th Cir. 1993) (school board, principal, vice-principal and teachers constitute one entity). Thus, the "intracorporate" conspiracy doctrine prevents Plaintiffs' conspiracy claim. It is well-settled that an entity cannot conspire with itself. *See Howard v. CitiFinancial, Inc.*, 195 F. Supp. 2d 811, 825 (S.D. Miss. 2002). Further, like Plaintiff's other state law claims, there are insufficient facts to determine to whom this claim is intended to apply or to discern the goal or purported unlawful activity of the alleged conspirators. For these reasons, Plaintiffs' conspiracy claim is not plausible.

Moreover, the inclusion of Defendants John and Jane Doe I-X only leave unknown and unnamed co-conspirators. Allowing a civil conspiracy claim to continue against one named party, such as Defendants, is unduly prejudicial because Defendants would be forced to defend a civil conspiracy claim without knowing the identity of its alleged co-conspirator(s), which is impossible. Furthermore, if a valid civil conspiracy claim went to trial with Defendants as the only known party, the risk of inconsistent judgments is greatly increased as one conspirator may be found liable and the other may be found not liable in a separate proceeding.

For these reasons, Plaintiffs' conspiracy claim should be dismissed as a matter of law.

5. **Abuse of Process**

Plaintiffs' state law claim for damages related to alleged "abuse of process" must be dismissed. The claim is impermissibly vague. Fatally, Plaintiffs do not identify what "civil or criminal process" was allegedly "illegal and improper." [Complaint ¶¶ 76-79] *See Moon v. Condere Corp.*, 690 So. 2d 1191, 1195 (Miss. 1997); *see also Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 512 (5th Cir. 1992).

40511868                                          11

More significantly, this claim is barred by the one-year statute of limitations for intentional torts. The Mississippi Supreme Court has further explained the nature of an abuse of process claim:

> The action of abuse of process consists in the misuse or misapplication of a legal process to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained.... **This Court has stated that the crucial element of this tort is the intent to abuse the privileges of the legal system**.

*Ayles ex rel. Allen v. Allen,* 907 So.2d 300, 303 (¶ 10) (Miss.2005) (emphasis added); *see also Coleman v. Smith*, 914 So. 2d 807, 812 (Miss. Ct. App. 2005). The Mississippi Supreme Court has long classified this cause of action as "malicious." *State, Use and Benefit of Foster v. Turner,* 319 So.2d 233, 236 (Miss.1975); *Moon v. Condere Corp.*, 690 So. 2d 1191, 1197 (Miss. 1997). ("This Court has stated that an action for abuse of process may arise where there is a 'malicious perversion of a regularly issued civil or criminal process...'")

Plaintiffs have alleged that the underlying events took place on March 20, 2014. [Complaint ¶ 15] Their Complaint was not filed until June 1, 2015, more than one year after the alleged abuse of process occurred. Therefore, this claim must be dismissed with prejudice.

6. **Negligent Infliction of Emotional Distress**

Plaintiffs' Complaint alleges negligent infliction of emotional distress. [Complaint ¶¶ 58-62]. This claim is barred by immunity provisions in the MTCA, as described above. Even if the immunity provisions do not apply to this claim, Plaintiffs have failed to plead the facts necessary to create a plausible right to relief. Under Mississippi law, Plaintiffs cannot recover emotional distress damages for merely negligent conduct absent showing some physical injury.

"There can be no recovery for mental pain and suffering from the mere negligent act of another unaccompanied by physical or bodily injury." *Franklin Collection Servs., Inc. v. Kyle*, 955 So. 2d 284, 290 (Miss. 2007) (*quoting Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss.1981)).  Plaintiffs allege physical injury only as to Plaintiff Larry D. Mays. [Complaint ¶ 16] Plaintiffs Robert Franklin and Shannon O'Quinn Franklin allege no physical injury.  Rather, they allege only that they were affected by the injuries sustained by Larry D. Mays. [Complaint ¶¶ 21, 60]  Therefore, claims by  Plaintiffs Robert Franklin and Shannon O'Quinn Franklin for negligent infliction of emotional distress cannot survive this Motion to Dismiss.

## 7.  Negligence Per Se

Plaintiffs' Complaint alleges negligence *per se*.  [Complaint ¶¶ 37-43].   This claim fails as a matter of law as the Plaintiff has not identified a statute or regulation that was allegedly violated. The Mississippi Court of Appeals has explained that "[n] egligence *per se* is founded on the violation of a statutory standard, usually a penal one." *Jordan v. Premier Entm't Biloxi, LLC*, 2014 WL 991733, at *1-2 (S.D. Miss. Mar. 13, 2014) (citing *Moore v. K & J Enter.*, 856 So.2d 621, 624 (¶ 5) (Miss. Ct. App. 2003)). To prevail on such a claim, the plaintiffs must show that: (1) they are "member[s] of the class sought to be protected under the statute;" (2) that their "injuries were of a type sought to be avoided by the statute;" and (3) "that the violation of the statute proximately caused or contributed to [their] injuries." *Id.* (citing *Brennan v. Webb*, 729 So.2d 244, 249 (Miss. Ct. App. 1998)). Plaintiffs have not pointed to, or even alleged, a violation of any particular statute, and therefore there is no basis on which to draw an inference that the Defendants could be liable for negligence *per se*. Therefore, this claim must be dismissed.

## 8.  Damages

Plaintiffs Complaint includes a specific demand for punitive damages, prejudgment

interest, and attorney's fees, none of which are allowed under the MTCA.  Miss. Code Ann. § 11-46-15(2).  Therefore, Plaintiffs are not entitled to punitive damages, prejudgment interest, and attorney's fees.

### 9.  <u>Res Ipsa Loquitur, Respondeat Superior, Agency, Reckless Disregard</u>

Several of Plaintiff's purported causes of action do not exist under Mississippi law, but instead are theories or elements potentially related to other counts in the Complaint. To the extent that Plaintiffs allege these as separate causes of action, these claims should be dismissed. These items do not state a claim upon which this Court may plausibly grant relief.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the claims specified aboe from Plaintiffs' Complaint be dismissed and that this Court grant any and all other relief it deems proper.

Respectfully submitted, this the 18th day of December, 2015.

> **CLAIBORNE COUNTY, MISSISSIPPI, MICHAEL WELLS, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, MARIO GRADY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, AND CORY WEATHERSPOON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES**
>
> By: /s/ Laura F. Rose
>         One of Their Attorneys

OF COUNSEL:
Laura F. Rose (MSB # 102256)
Jessica Morris (MSB # 101891)
Adams and Reese LLP
1085 Highland Colony Parkway
Ridgeland, MS  39157
Phone: (601) 353-3234
Facsimile: (601) 355-9708
laura.rose@arlaw.com
Jessica.morris@arlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following and mailed via U.S. mail to the following:

Thomas J. Bellinder
Thomas J. Bellinder, P.A.
232 Market St.
Second Floor
Flowood, MS 39232

Daniel J. Griffith
Griffith & Carr
P. O. Drawer 1680
Cleveland, MS 38732

Tommy Whitfield
Whitfield Law Group, PLLC
660 Lakeland East, Suite 200
Flowood, MS 39232

Dated:  December 18, 2015.

/s/ Laura F. Rose
Laura F. Rose

Jordan v. Premier Entertainment Biloxi, LLC, Slip Copy (2014)

2014 WL 5773762

2014 WL 5773762
Only the Westlaw citation is currently available.
United States District Court,
S.D. Mississippi,
Southern Division.

Jason JORDAN; Alyssa Jordan, Individually
and on behalf of the Estate of Unborn
Baby Jordan, Deceased, and on behalf of
all the heirs and law and wrongful death
beneficiaries of Unborn Baby Jordan,
Deceased; and Christopher Soukup, Plaintiffs
v.
PREMIER ENTERTAINMENT BILOXI, LLC,
doing business as Hard Rock Hotel & Casino
Biloxi; The City of Biloxi, Mississippi; Doe
Defendant One; Joshua Hamilton, in his official
and individual capacities; Doe Defendant
Three; Doe Defendant Four; Doe Defendant
Five; and Doe Defendants 6–10, Defendants.

No. 1:13CV195–LG–JCG.   |   Signed Nov. 6, 2014.

**Attorneys and Law Firms**

Thomas J. Bellinder, Thomas J. Bellinder, PA, Jackson, MS, for Plaintiffs.

David W. Stewart, Copeland, Cook, Taylor & Bush, P.A., Gulfport, MS, for Defendants.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT PREMIER ENTERTAINMENT BILOXI LLC'S MOTIONS FOR SUMMARY JUDGMENT*

LOUIS GUIROLA, JR., Chief Judge.

*1 BEFORE THE COURT are the following Motions filed by Defendant Premier Entertainment Biloxi LLC d/b/a Hard Rock Hotel & Casino Biloxi ("Hard Rock" or "Defendant"): [99] Motion for Summary Judgment as to All Claims of Alyssa Jordan; [101] Motion for Summary Judgment as to All Claims of Jason Jordan; [103] Motion for Summary Judgment as to All Claims of Christopher Soukop; and [105] Motion for Summary Judgment as to Alyssa Jordan's Wrongful Death Claim.

Based on the evidence before it, the Court finds that Hard Rock's Motions for Summary Judgment should be granted. Hard Rock met its summary judgment burden on multiple claims which Plaintiffs have not addressed. Specifically, Plaintiffs failed to come forward with any evidence to create a genuine issue of material fact on their claims for premises liability, breach of fiduciary duty, and wrongful death.

Hard Rock is also entitled to summary judgment on Plaintiffs' negligence and reckless disregard claims with respect to alleged mistreatment at the hands of Hard Rock security personnel. Those claims seek to recover for intentional torts, and, thus, are barred by the one-year statute of limitations.

Furthermore, Hard Rock met its summary judgment burden on Plaintiffs' claims for "negligent hiring, retention, supervision, and control" and "negligent failure to discipline or take necessary corrective action," and none of the evidence submitted by Plaintiffs in their response shows the existence of a genuine issue for trial on these claims.

Finally, the Jordan Plaintiffs cannot state a derivative loss of consortium claim where none of their underlying claims survive summary judgment. Hard Rock's Motions for Summary Judgment should be granted and all of Plaintiffs' claims dismissed based on Plaintiffs' failure to carry their summary judgment burden and because the claims are barred by the applicable statute of limitations.

**FACTS AND PROCEDURAL HISTORY**

Plaintiffs Jason Jordan, Alyssa Jordan, and Christopher Soukup claim that they were injured by Hard Rock security guards and officers of the Biloxi Police Department during an altercation that occurred at the casino on November 27, 2011. They also allege that the unborn child of Jason and Alyssa Jordan died as a result of the altercation.

Plaintiffs were attending an informal social gathering of United States Air Force personnel at The Ledge Lounge inside the Hard Rock when an intoxicated Jason Jordan began arguing with another member of the group, "Airman Dorack." There is no dispute that only members of the Air Force group were involved in the initial confrontation between Jason Jordan and Airman Dorack "up to the point that Hard Rock security entered The Ledge to respond to it...." (Jason Jordan Dep. 69:20–70:1, Ex. B to Def's. Mot., ECF No. 99–2). Christopher Soukup, who was also

Jordan v. Premier Entertainment Biloxi, LLC, Slip Copy (2014)

2014 WL 5773762

with the group, testified that he became involved when he saw Airman Dorack "becoming verbally confrontational and visibly agitated" with Jason Jordan. (Soukup Dep. 79:3–5, Ex. D to Def's. Mot., ECF No. 99–4). Soukup stepped in and physically separated the two and "attempted to get Jordan out of the nightclub[.]" (*Id.* at 79:6–13).

**\*2** Plaintiffs' allegations against Hard Rock security all stem from what happened when Hard Rock security personnel intervened in the altercation. Plaintiffs allege that Jason Jordan and Christopher Soukup were mistreated by the Hard Rock employees and also by the City of Biloxi police once they arrived on the scene. In support of their position, Plaintiffs submit the Affidavit of Dennis Waller,[1] whom Plaintiffs retained to offer expert testimony as a "police practices consultant and certified legal investigator."(Pls.' Mem. 8, ECF No. 140).

Waller and Plaintiffs claim that Mr. Jordan was rendered unconscious after a Hard Rock security officer placed his entire weight on Mr. Jordan for more than four minutes while Mr. Jordan was in a prone position on the floor until the Biloxi police arrived. They also claim that Hard Rock security officers handcuffed Mr. Soukop, but did not "double lock" the handcuffs, as they should have done to prevent injury. The security officers then removed Mr. Soukup to a small room, where he remained in handcuffs for a period of time before Biloxi police officers removed him.

Plaintiffs originally alleged numerous claims against Hard Rock, including negligence *per se,* claims of constitutional violations brought pursuant to 42 U.S.C. § 1983, and multiple intentional torts, including assault and battery. On March 3, 2014, the Court dismissed Plaintiffs' claims for intentional torts as untimely and also dismissed Plaintiffs' negligence *per se* and § 1983 claims. (Order, ECF No. 67).

Therefore, the following claims against Hard Rock, which the parties do not dispute are governed by Mississippi law, remain: (1) premises liability; (2) wrongful death; (3) negligence; (4) gross negligence; (5) negligent hiring, retention, supervision, and control; (6) loss of consortium; (7) negligent infliction of emotional distress; (8) reckless disregard for the rights and safety of others; (9) breach of non-delegable fiduciary duty; and (10) negligent failure to discipline or take necessary corrective action.[2] Hard Rock has moved for summary judgment as to each of these claims.

## STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit Auth.,* 404 F.3d 938, 940 (5th Cir.2005). As movant, Defendant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). Defendant has the burden of establishing the absence of a genuine issue of material fact, and unless it has done so, the Court may not grant the Motions, regardless of whether any response was filed. *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985).

**\*3** If Defendant carries its summary judgment burden, the burden shifts to Plaintiffs to show that summary judgment should not be granted. *Celotex,* 477 U.S. at 324–25. Plaintiffs may not rest upon mere allegations in their First Amended Complaint but must set forth specific facts showing the existence of a genuine issue for trial. *Abarca,* 404 F.3d at 940. The mere existence of a factual dispute does not preclude the granting of summary judgment since the requirement is that there be no dispute of *material* fact.[3] *St. Amant v. Benoit,* 806 F.2d 1294, 1296–97 (5th Cir.1987).

## DISCUSSION

**Premises liability**

Hard Rock states that Plaintiffs' premises liability claim fails because Hard Rock did not have actual or constructive knowledge of any alleged assailant's violent nature or that an atmosphere of violence existed on the premises. Plaintiffs have not responded to Hard Rock's arguments with respect to their premises liability claim .[4]

"[A] premises owner must employ reasonable care to protect an invitee from 'reasonably foreseeable injuries at the hands of another.' " *Holmes v. Campbell Props., Inc.,* 47 So.3d 721, 725 (Miss.Ct.App.2010) (quoting *Newell v. S. Jitney Jungle Co.,* 830 So.2d 621, 623 (Miss.2002)). "An assault on

the premises is reasonably foreseeable if the defendant had either: (1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge an atmosphere of violence existed on the premises." *Id.* (citation and quotation marks omitted).

Plaintiffs have not come forward with any evidence to rebut Hard Rock's summary judgment showing, based on Jason Jordan's own deposition testimony, that it did not have knowledge of any assailant's violent nature or that an atmosphere of violence existed on the premises. Accordingly, the Court finds that summary judgment is proper on Plaintiffs' premises liability claim. *See Holmes,* 47 So.3d at 725.

**Breach of fiduciary duty**

Hard Rock argues that there is no Mississippi law recognizing a fiduciary duty owed to an invitee by a business owner under similar circumstances as those alleged in this action. Again, Plaintiffs have not responded.

"The existence of a fiduciary duty must be established before a breach of that duty can arise."*Merchants & Planters Bank of Raymond v. Williamson,* 691 So.2d 398, 403 (Miss.1997). Like Hard Rock, the Court has reviewed Mississippi law and finds no support for the proposition that Hard Rock owed a fiduciary duty to any Plaintiff. Therefore, the Court finds summary judgment is also appropriate on this claim.

**Wrongful death**

Mississippi's wrong death statute provides for damages for the death "of any unborn quick child ... caused by any real, wrongful or negligent act or omission...."Miss.Code Ann. § 11–7–13. The Mississippi Supreme Court has defined "quick child" as "one that has developed so that it moves within the mother's womb."*66 Fed. Credit Union v. Tucker,* 853 So.2d 104, 110 (Miss.2003). Furthermore, to recover damages for wrongful death, a plaintiff is required to prove that the defendant's negligence or wrongful acts caused the decedent's death. *See Wilks v. Am. Tobacco Co.,* 680 So.2d 839, 842 (Miss.1996).

**\*4** Hard Rock presented the affidavit of its medical expert, Dr. William Roberts, in which he states that Alyssa Jordan's fetus was not "quick" at the time of her alleged miscarriage and that, even if the fetus was "quick," the November 2011 incident was not the proximate cause of the miscarriage. (*See* Roberts Aff., Ex. D to Def's Mot., ECF No. 105–4). Plaintiffs have not offered any evidence in response or

otherwise attempted to show that a genuine issue of material facts remains regarding these issues. Hard Rock is entitled to summary judgment on the wrongful death claim.

**Negligence, gross negligence, negligent infliction of emotional distress, and reckless disregard**

Hard Rock argues that Plaintiffs' negligence and reckless disregard claims are properly categorized as intentional torts, and, thus, are barred by the one-year statute of limitations for intentional torts, Miss.Code Ann. § 15–1–35. Plaintiffs have not made any argument as to why those claims should not be treated as untimely intentional tort claims.

The limitation period in § 15–1–35"has been interpreted to encompass other intentional acts that are substantially similar to the causes of action enumerated therein."*McGee v. Willbros Const., US, LLC,* No. 5:11–CV–00080–DCB–JMR, 2011 WL 6781434, at \*2 (S.D.Miss. Dec. 27, 2011)."Moreover, courts are not bound to accept a plaintiff's style of the cause of action and may look to the 'essence of the action' to determine whether" the one-year statute applies. *Id.* (citation omitted). The rationale behind doing so "is to prevent a plaintiff from mischaracterizing his tort claims in an attempt to escape the statute's reach."*Id.* Thus, a plaintiff's "attempt to re-cast an intentional tort claim as a negligence action will not circumvent the statute of limitations that applies to intentional torts."*Maas v. City of Ocean Springs,* No. 1:11cv287LG-RHW, 2012 WL 2603620, at \*3 (S.D.Miss. July 5, 2012). In a case similar to this one, involving allegations of unlawful arrest and assault against a police officer, the Mississippi Supreme Court held that " 'language in the complaint alleging negligence was 'of no moment' because the complaint 'stated a claim generically akin to common law assault and battery.' " *Id.* (quoting *City of Mound Bayou v. Johnson,* 562 So.2d 1212, 1215 (Miss.1990)); *see also Howard v. Wilson,* 62 So.3d 955, 956 (Miss.2011) (discussing numerous cases where the Mississippi Supreme Court "has prohibited the characterization of an intentional tort as an act of negligence in order to escape the one-year bar").

Plaintiffs' allegations of negligence and reckless disregard related to their treatment at the hands of Hard Rock security personnel are no different. These claims are akin to common law assault and battery. Plaintiffs allege that "[m]oments after the altercation ended, several large males without any insignia or nametags identifying them as security or police or Hard Rock employees, grabbed, restrained and physically assaulted Jason Jordan" and one of them "pinned Jason Jordan to the

Jordan v. Premier Entertainment Biloxi, LLC, Slip Copy (2014)

2014 WL 5773762

ground by placing the entirety of his weight onto Jordan's body ....“ (1st Am. Compl. 6 (¶¶ 18–19), ECF No. 7–2). They also allege that Soukup "was handcuffed and detained by personnel of the Hard Rock" and that he "suffered a dislocated elbow and a broken wrist at the hands of the Hard Rock employees." (*Id.* at 8 (¶ 31)). According to Plaintiffs, "[t]hese *physical attacks* resulted in significant physical injuries and emotional distress to Mr. Jordan and Mr. Soukup, including broken wrists, a dislocated elbow[,] numerous scrapes, cuts, bruising, sprains and strains, and potentially permanent nerve damage." (*Id.* at 8 (¶ 32)) (emphasis added).*Cf. Howard,* 62 So.3d at 957. As the Mississippi Supreme Court has recognized, there is no such thing a "negligent assault" or a "negligent battery." *See Howard,* 62 So.3d at 957.

**\*5** Accordingly, the statute of limitations bars Plaintiffs' negligence and reckless disregard claims.[5] Those claims accrued on November 27, 2011, and, thus, the applicable statute of limitations ran on or about November 27, 2012, several months before Plaintiffs instituted legal action in April 2013.[6]

For the same reason, the Court finds that Plaintiffs' claim for negligent infliction of emotional distress is time-barred. *See Maas v. Moran,* No. 1:11CV287–LG–RHW, 2013 WL 4456154, at \*9 (S.D.Miss. Aug. 16, 2012).

Finally, the Court rejects Plaintiffs' argument that there are disputes of material fact regarding whether medical personnel should have been requested to examine Mr. Jordan before removing him from the casino, "as well as whether or not the manner and method of removal was proper."(Pls.' Mem. 13, ECF No. 140). Those claims are not against the remaining Defendant, but the City of Biloxi police. (*See* Waller Aff. 5 (¶ 18), ECF No. 138–1).

**Plaintiffs' claims related to Hard Rock's training and supervision of employees**
The Court agrees with Hard Rock that Plaintiffs' Count XVII for "Negligent Failure to Discipline or Take Necessary Corrective Action" is redundant of Count V for "Negligent Hiring, Retention, Supervision, and Control."In order to prove their claims of negligent training and supervision, Plaintiffs are required to show that Hard Rock knew or should have known that one or more of its employees allegedly involved in the incident at issue was incompetent or unfit. *Doe ex rel. Brown v. Pontotoc Cnty. Sch. Dist.,* 957 So.2d 410, 416–17 (Miss.Ct.App.2007). This requires proof that

Hard Rock "had either actual or constructive knowledge of an employee's incompetence or unfitness...."*Id.* at 417.

Where an assault by an employee is alleged, "specific evidence of an employer's actual or constructive knowledge of its employee's dangerous or violent tendencies is necessary in order to create a genuine issue of material fact...."*Holmes,* 47 So.3d at 729. The mere fact of an altercation occurring is not enough to meet this burden. *Parmenter v. J & B Enters., Inc.,* 99 So.3d 207, 218 (Miss.Ct.App.2012); *see also Holmes,* 47 So.3d at 728–29 ("violent act of an employee standing alone is simply insufficient to defeat summary judgment on an allegation of failure to train[;] specific evidence of an employee's actual or constructive knowledge of its employee's dangerous or violent tendencies is necessary in order to create a genuine issue of material fact on an improper training or supervision theory of liability").

Here, even assuming that one or more Hard Rock employees acted improperly, Plaintiffs present no evidence that any Hard Rock employee had a history of incompetence, unfitness, or violence *and* that Hard Rock had actual or constructive knowledge of the same. In their First Amended Complaint, Plaintiffs stated that they would "show that over the course of the past several years, there have been numerous complaints made about, but not limited to, incidents of excessive force, violence by officers and security personnel and the failure to provide adequate supervision of employees, police officers and/or security personnel."(1st Am. Compl. 25–26 (¶ 117), ECF No. 7–2). However, any such evidence is absent from Plaintiffs' summary judgment responses.

**\*6** Plaintiffs' citation to deposition testimony of various Hard Rock witnesses with respect to whether Hard Rock security personnel are authorized or trained to make arrests, (*see* Pls.' Mem. 9–11, 16–17, ECF No. 140; Pls.' Mem. 9–11, 13, ECF No. 142), does not change this result. At most, the cited testimony shows that there is an issue of fact whether the employees followed Hard Rock policy in their own conduct. It does not create an issue of fact whether Hard Rock was negligent in failing to properly train or supervise its employees. Hard Rock is entitled to summary judgment on Plaintiffs' claims related to its supervision and training of employees.

**Loss of consortium**
Because the Court finds that summary judgment is due to be granted on all claims, the loss of consortium claims by the Jordans necessarily fail. *See, e.g., J & J Timber*

2014 WL 5773762

*Co. v. Broome*, 932 So.2d 1, 6 (Miss.2006) ("Mississippi law dictates that if the underlying personal injury claim is disposed of, the loss of consortium claim cannot be maintained on its own.").

## CONCLUSION

For the reasons discussed herein, the Court grants Defendant's Motions for Summary Judgment in full. Because this Order adjudicates the last remaining claims in this action, a separate Judgment will enter.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendant Premier Entertainment Biloxi LLC d/b/a Hard Rock Hotel & Casino's [99] Motion for Summary Judgment as to All Claims of Alyssa Jordan, [101] Motion for Summary Judgment as to All Claims of Jason Jordan, [103] Motion for Summary Judgment as to All Claims of Christopher Soukop, and [105] Motion for Summary Judgment as to Alyssa Jordan's Wrongful Death are **GRANTED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that the claims of Plaintiffs Jason Jordan, Alyssa Jordan, and Christopher Soukup are **DISMISSED WITH PREJUDICE.**

**SO ORDERED AND ADJUDGED.**

## *JUDGMENT*

Having disposed of all dispositive matters pending before this Court, Final Judgment is hereby entered in favor of Defendant Premier Entertainment Biloxi LLC d/b/a Hard Rock Hotel & Casino Biloxi and against Plaintiffs Jason Jordan, Alyssa Jordan, and Christopher Soukup.

**SO ORDERED AND ADJUDGED.**

**All Citations**

Slip Copy, 2014 WL 5773762

Footnotes

1   While Plaintiffs purported to submit deposition testimony with their summary judgment responses, no deposition pages were attached beyond the first page. Regardless, the Court has considered the deposition testimony quoted in Plaintiffs' responses to the extent relevant to a summary judgment analysis. Plaintiffs also submitted the Waller Affidavit multiple times, but since each Affidavit is identical, the Court will refer to Document 138–1 throughout for ease of reference. Hard Rock filed a Motion to Exclude related to portions of the Waller Affidavit. However, the alleged objectionable portions of the Waller Affidavit do not affect this Court's determination that summary judgment should be granted in favor of Hard Rock on all claims.

2   Plaintiffs' First Amended Complaint also included claims for "res ipsa loquitur," "respondeat superior," and "agency," none of which are causes of action under Mississippi law. Although Plaintiffs sued the City of Biloxi and Officer Hamilton in this action, they have now settled with those Defendants. Even so, Hard Rock is not liable for the actions of any City of Biloxi employee, such as Plaintiffs' allegation that Officer Hamilton used a taser on Plaintiff Jason Jordan, under an agency or *respondeat superior* theory. There is no argument or evidence before the Court of any agency relationship between Hard Rock and the City of Biloxi.

3   For example, Plaintiffs argue that the differing deposition testimony as to what actually transpired between Airman Dorack and Jason Jordan creates an issue of fact surrounding the initial altercation. (*See* Pls.' Mem. 12, ECF No. 142). However, since Plaintiffs' claims are limited to actions taken by Hard Rock security personnel after the initial altercation, any disputed facts related to the initial altercation are not material.

4   Hard Rock also argues that Plaintiffs cannot sustain a slip and fall claim, but the Court finds that Plaintiffs are not stating such a claim and, regardless, have not offered any evidence to support such a claim.

5   Any negligence action by Alyssa Jordan would still fail because Hard Rock met its summary judgment burden of showing that there was no genuine issue of material fact that any alleged injury suffered by Mrs. Jordan was not proximately caused by any action of Hard Rock security personnel and Plaintiffs offered no evidence to rebut this showing. Mrs. Jordan herself testified that she was not injured nor did she seek medical treatment for any physical injury from the incident.

6   The Court finds that Plaintiffs have also made negligence claims, separate and apart from their intentional tort claims, that Hard Rock was negligent in its training and supervision of security employees. Since those claims are not barred by the statute of limitations, the Court addresses them below.#

Jordan v. Premier Entertainment Biloxi, LLC, Slip Copy (2014)

2014 WL 5773762

---

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Jones v. Jackson State University, Not Reported in F.Supp.2d (2008)

2008 WL 682411
Only the Westlaw citation is currently available.
United States District Court,
S.D. Mississippi,
Jackson Division.

Kushauntia L. JONES, Plaintiff
v.
JACKSON STATE UNIVERSITY and
Anthony Dean, individually, Defendants.

Civil Action No. 3:07cv72
DPJ-JCS.   |   March 7, 2008.

**Attorneys and Law Firms**

Louis H. Watson, Jr., Robert Nicholas Norris, Louis H. Watson, Jr ., PA, Jackson, MS, for Plaintiff.

J. Cal Mayo, Jr., Mary A. Connell, Mayo Mallette, PLLC, Oxford, MS, Latoya C. Merritt, Phelps Dunbar, Jackson, MS, for Defendants.

**MEMORANDUM OPINION AND ORDER**

DANIEL P. JORDAN III, District Judge.

*1 This employment discrimination case is before the Court on motions for summary judgment filed by Defendants Jackson State University ("JSU") and Anthony Dean ("Dean"). Plaintiff Kushauntia L. Jones ("Jones") has responded, conceding her negligence claims and contesting the rest. The Court, having considered the memoranda and submissions of the parties and the applicable law, concludes that Defendant Dean's motion [48] should be granted in part and denied in part and that Defendant JSU's motion [47] should be granted in part, denied in part, and taken under advisement in part.

**I. Facts and Procedural History**

Plaintiff began her employment at JSU in October 2001. From January to August 2005, Jones served as an Administrative Assistant under the supervision of Defendant Dean. Plaintiff claims that Dean began sexually harassing her in September 2005. According to Plaintiff, the conduct began with inappropriate remarks, but Dean apologized and promised that the conduct would stop. The conduct allegedly continued

and intensified in the following months to include requests for sexual favors, inappropriate gestures, crude comments, and grabbing of Jones's underwear. In November and December, Dean allegedly began exposing himself to Jones, and she further claims that on one such occasion he "forced the back of her head down ... with his hand." Dean denies all of this.

Plaintiff formally complained about Dean's alleged conduct to the University's Chief of Staff and Director of Human Resources on January 11-13, 2006. JSU immediately investigated. However, the results were inconclusive, and a hearing before a grievance panel followed. That panel ultimately concluded that neither side presented "concrete evidence" as to whether Dean sexually harassed Plaintiff. Nevertheless, the panel did determine that Dean had been inappropriately flirtatious, that the school should reprimand him for his conduct, and, if possible, the school should transfer Jones from his supervision. JSU declined the recommendation to reprimand Dean and initially left Plaintiff under his supervision, though she was moved within the office and given different responsibilities. Plaintiff thereafter requested a transfer, but it did not immediately occur. Approximately one year later, at Dean's request, the school transferred Plaintiff to another department. Dean testified that he requested the move because, among other things, "she had alleged retaliation" after her grievance was denied.

Having exhausted her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission, Jones filed the present suit against JSU and Dean alleging sexual harassment, retaliation, "outrage," intentional and/or negligent infliction of emotional distress, negligent supervision, tortuous interference with business and/or contractual relations, and punitive damages. Defendants have moved for judgment as a matter of law as to all claims.

**II. Analysis**

*2 Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Jones v. Jackson State University, Not Reported in F.Supp.2d (2008)

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir.2002); *SEC v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1997); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir.1995). A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is not a sufficient response to a motion for summary judgment. *F.D.I.C. v. Brewer,* 823 F.Supp. 1341, 1347 (S.D.Miss.1993) (citing *Washington v. Armstrong World Indus., Inc.,* 839 F .3d 1121, 1122-23 (5th Cir.1988)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 150 (2000).

"In an employment discrimination case, the Court should focus on whether a genuine issue exists regarding whether the defendant intentionally discriminated against the plaintiff. Unsubstantiated assertions are not competent summary judgment evidence. Nor are conjecture or speculation adequate to satisfy the nonmovant's burden ." *Parker v. Tyson Foods, Inc.,* No. 5:05-cv-209, 2007 WL 2021928, at *1 (S.D.Miss. July 9, 2007) (internal citations omitted). Furthermore,

> [t]he Fifth Circuit has held that an employee's self-serving generalized testimony stating his subjective belief that discrimination occurred is simply insufficient to support a jury verdict in plaintiff's favor. [Thus], the Fifth Circuit has held that summary

> judgment may be appropriate in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.

**\*3** *Id.* (internal citations and quotations omitted).

**A. Sexual Harassment**
Plaintiff's Amended Complaint alleges that JSU and Dean are liable under Title VII of the Civil Rights Act of 1964 for Dean's alleged sexual harassment. Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a) (1) (2003). Plaintiff further contends that Dean is liable under 42 U.S.C. § 1983.

**1. Sexual Harassment Claim Against Defendant JSU**
Although JSU contests the facts, its motion correctly accepts that the facts, when viewed in the light most favorable to Plaintiff, would state a prima facie case of sexual harassment under Title VII. Defendant therefore moves for summary judgment pursuant to the affirmative defense recognized in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

In cases involving harassment by a supervisor where no tangible employment action is taken, *Ellerth* and *Faragher* establish an affirmative defense to vicarious liability under Title VII; "[t]he defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth,* 524 U.S. at 765.

JSU adopted a policy against sexual harassment and a comprehensive grievance procedure, both of which were known to Plaintiff. The issues, therefore, are whether JSU "exercised reasonable care" to prevent and promptly correct the alleged harassment and whether Jones availed herself of the University's procedures to avoid harm. *Id.*

The Court finds that JSU has not established at least the second prong of the test-that Plaintiff failed to avail herself of the procedures. Defendant argues that Plaintiff's four-

month delay in filing a formal grievance demonstrates that she "unreasonably failed to take advantage of any preventive or corrective opportunities." *Id.* Assuming that the alleged conduct was sufficiently severe and pervasive to constitute sexual harassment in September 2005, Plaintiff attempted to first address the matter directly with Dean, who allegedly apologized and assured her that the conduct would cease. The more serious allegations occurred in November and December 2005, when Dean allegedly exposed himself. The final straw, according to Plaintiff, was another instance of verbal harassment that occurred the same day she made her complaint in January 2006.

The issue in this case is similar to the one addressed in *Watts v. Kroger Co.,* 170 F.3d 505 (5th Cir.1999). There, the plaintiff alleged sexual harassment that began in 1993, but intensified in the Spring of 1994. *Id.* at 507. The plaintiff finally complained in July 1994. *Id.* at 508. Finding that the delay was too long, the trial court dismissed the sexual harassment claim. *Id.* at 510. The Fifth Circuit Court of Appeals reversed, explaining:

> **\*4** Watts alleges that her supervisor's harassment intensified in the spring of 1994. A jury could find that waiting until July of that same year before complaining is not unreasonable. *Cf. Fall v. Indiana Univ. Bd. of Trustees,* 12 F.Supp.2d 870, 884 (N.D.Ind. July 23, 1998) ("In other words, the [c]ourt cannot say as a matter of law that a sexual assault victim who waits three months to report the incident, under these circumstances, unreasonably failed to take advantage of the [defendant's] anti-harassment procedures.").

*Id.* at 510-11. So too, this Court cannot say as a matter of law that Plaintiff's delay was unreasonable. Defendant's motion for summary judgment is therefore denied as to this claim.

**2. *Sexual Harassment Claim Against Defendant Dean***
Plaintiff's Title VII sexual harassment claim against Dean must fail because "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 382 n. 1 (5th Cir.2003) (citing *Smith v. Amedisys Inc.,* 298 F.3d 434, 448-49 (5th Cir.2002)). Similarly, Plaintiff's claim under 42 U.S.C. § 1981, to the extent one can be read in the Amended Complaint, also fails because § 1981 addresses race-based discrimination, and Plaintiff makes no such allegation. Plaintiff offers no real opposition to these portions of Dean's motion, which are due

to be granted, but insists that her claim for sexual harassment survives under 42 U.S.C. § 1983.

"Section 1983 affords redress against a person who under color of state law deprives another person of any federal constitutional or statutory right." *San Jacinto Sav. & Loan v. Kacal,* 928 F.2d 697, 700 (5th Cir.1991) (citing *Thibodeaux v. Bordelon,* 740 F.2d 329 (5th Cir.1984); *Phillips v. Vandygriff,* 711 F.2d 1217, 1221 (5th Cir.1983), *cert. denied,* 469 U.S. 821 (1984)). Defendant offers the following two arguments to defeat Plaintiff's § 1983 claim: (1) Plaintiff failed to identify a policy or custom that caused her alleged injury, and (2) the record evidence does not support the alleged acts of sexual harassment.

Dean cites *Bennett v. City of Slidell* for the proposition that Plaintiff must establish a policy or custom. 728 F.2d 762, 767 (5th Cir.1984), *cert. denied,* 472 U.S. 1016 (1985). *Bennett* holds that "*a city* may be liable only where the injury is inflicted in the execution of city policy." *Id.* (emphasis added). That holding derives from the fact that § 1983 creates no governmental respondeat superior liability. *Id.* at 765-66 (citing *Monroe v. Pape,* 365 U.S. 167 (1961)). A plaintiff may, however, succeed under § 1983 by showing that an individual acting under color of state law was "personally involved in" the alleged constitutional or statutory deprivation. *Kohler v. Englade,* 470 F.3d 1104, 1115 (5th Cir.2006); *Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir.1995). Plaintiff has taken this approach.

**\*5** Finally, the Court must reject the argument that Plaintiff's record evidence is insufficient to create a material question of fact as to whether Dean sexually harassed her. When parties present contradictory facts, the Court may "not make credibility determinations or weigh the evidence." *Reeves,* 530 U.S. at 150. Defendant Dean offers no other argument to defeat Plaintiff's § 1983 claim, and the Court therefore holds that this claim survives.

**B. *State Tort Claims Against Dean***
Plaintiff's Amended Complaint includes claims of intentional infliction of emotional distress, outrage, and tortious interference with a contract against Defendant Dean. Dean submits that all state tort claims against him are barred by the exclusive remedies provisions of Mississippi Tort's Claims Act (MTCA). Miss.Code Ann. § 11-46-7(1) (Rev.2002). That section states:

Jones v. Jackson State University, Not Reported in F.Supp.2d (2008)

> The remedy provided by this chapter against a governmental entity or its employee *is exclusive of any other civil action or civil proceeding* by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter *shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.*

*Id.* (emphasis added).

Interpreting this provision, the Mississippi Supreme Court has held, "The MTCA provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit." *City of Jackson v. Sutton,* 797 So.2d 977, 981 (Miss.2001) (citations omitted) ("The case law is clear that the Mississippi Tort Claims Act is the only route by which the plaintiffs could file suit against" a governmental employee; *see also Univ. of S. Miss. v. Williams,* 891 So.2d 160 (Miss.2004) (same). There is no suggestion in the record that Plaintiff pursued her claims under the MTCA.

Plaintiff's initial response to Dean's motion for summary judgment did not address the MTCA argument. The Court therefore invited Plaintiff to file a supplemental response, which she did, but her response still failed to address Dean's exclusivity argument. Plaintiff has not offered the Court any argument or evidence suggesting that her claims survive the exclusivity bar of the MTCA, and the Court therefore grants Defendant Dean's motion with respect to Plaintiff's tort claims. *Id., see also* FED.R.CIV.P. 56(e).

### C. *Intentional Infliction of Emotional Distress/Outrage Claim Against JSU*

Plaintiff seeks damages from Defendant JSU for intentional infliction of emotional distress, "the Mississippi equivalent of the 'tort of outrage.' " *Bombarbier Capital, Inc. v. Royer Homes of Miss., Inc.,* No. 1:04cv884, 2006 WL 1328907

(S.D.Miss. May 15, 2006). "The standard for intentional infliction of emotional distress in Mississippi is very high: [a] defendant's conduct must be wanton and wilful and [such that] it would evoke outrage or revulsion." *Hatley v. Hilton Hotels Corp.,* 308 F.3d 473, 476 (5th Cir.2002) (internal quotations and citation omitted). As explained by the Mississippi Supreme Court, conduct constituting intentional infliction of emotional distress must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Speed v. Scott,* 787 So.2d 626, 630 (Miss.2001) (quoting *Pegues v. Emerson Elec. Co.,* 913 F.Supp. 976, 982 (N.D.Miss.1996)). "[L]iability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Raiola v. Chevron U.S.A., Inc.,* 872 So.2d 79, 85 (Miss.Ct.App.2004) (citation omitted).

**\*6** In analyzing an intentional infliction of emotional distress claim, it is also important to note that the conduct itself must be extreme and outrageous.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

*Dandridge v. Chromcraft Corp.,* 914 F.Supp. 1396, 1405 (N.D.Miss.1996) (quoting *Burroughs v. FFP Operating Partners, L.P.,* 28 F.3d 543, 546 (5th Cir.1994)).

Finally, damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes. "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." *Prunty v. Ark. Freightways, Inc.,* 16 F.3d 649, 654 (5th Cir.1994) (citation and internal quotation omitted) (quoted in *Raiola,* 872 So.2d at 85). "In general, causes of action for intentional infliction of emotional distress within the context of a workplace environment are limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Means v. B & G Enters., Inc.,* No. 1:04cv776, 2006

Jones v. Jackson State University, Not Reported in F.Supp.2d (2008)

WL 2632568, at *11 (S.D.Miss. Sept. 13, 2006) (internal quotations and citation omitted).

Some of the acts Plaintiff alleges against JSU are either unsupported in the record or mischaracterize the nature of Defendant's conduct. Those issues cannot rebut a properly supported motion for summary judgment. Substantively, Plaintiff takes issue with the way Defendant conducted its investigation, its findings, and its follow-up measures, but these acts all fall within the realm of employment decisions. Moreover, there is a distinction between the employer's liability for sexual harassment under Title VII and intentional infliction of emotional distress. *See Hatley,* 308 F .3d at 476 (affirming dismissal of intentional infliction of emotional distress claim while reversing judgment as to sexual harassment claim); *see also Knight v. Miss. Dep't of Pub. Safety,* No. 3:06cv139, 2007 WL 2219327, at *8 (S.D.Miss. July 27, 2007) (denying motion for summary judgment on sexual harassment claim but granting motion as to intentional infliction of emotional distress).

Finally, Plaintiff makes a ratification argument. Again, the *Hatley* opinion is helpful. The plaintiffs in that case also claimed ratification due to defendant's "sham" investigation of their complaints. 308 F.3d at 474-45. In rejecting an *Ellerth* defense, the Fifth Circuit noted that the evidence "supported the jury's finding that the investigation was inadequate and that [the employer] did not take reasonable measures to correct or prevent the harassment." *Id.* at 476. Nevertheless, the court found that the facts did not support ratification. *Id.; see also Little v. K & B Miss. Corp.,* No. 3:06-cv-501, 2007 WL 2417353, at *7 (S.D.Miss. Aug. 27, 2007). But *see Prunty,* 16 F.3d 655 (finding ratification under Texas law where employer was aware of "extreme and outrageous" conduct yet did nothing for extended period of time).

*7 Plaintiff attempts to distinguish *Hatley* by stating that the "key difference ... is that the complaints made by the plaintiffs in *Hatley* had 'fallen through the cracks,' " whereas JSU has not argued that it was negligent. Plaintiff's Response at 22. What *Hatley* actually says is that "previous sexual harassment complaints had 'fallen through the cracks.' " 308 F.3d at 475-76 (emphasis added). It is not apparent that the "previous" complaints were even made by the *Hatley* plaintiffs, but it is clear that they were not the same complaints about which suit was brought. *Id.* Like JSU, the defendant

in *Hatley* believed its investigation of the subject claims was thorough. *Id* . at 475.

Plaintiff also attempts to distinguish *Hatley* because the employer "found the allegation to be without merit," whereas in this case, JSU "found that Plaintiff had been sexually harassed, [yet] it did nothing to prevent further harassment." Plaintiff's Response at 22. Plaintiff's argument mischaracterizes the record. JSU found inappropriate flirtation, but that is not the same as finding sexual harassment which must be sufficiently severe and pervasive. More precisely, JSU could not determine whether or not Dean sexually harassed Jones in this "he said, she said" case. Plaintiff has presented no authority for finding ratification on these facts, and the Court finds that JSU's motion should be granted.

### D. *Punitive Damages*

Defendant JSU moved for summary judgment as to Plaintiff's punitive damages claim pursuant to 42 U.S.C. § 1981a(b)(1). Absent a viable state law claim, Defendant's argument has merit, and Plaintiff did not respond. Thus, summary judgment is appropriate under Rule 56(e) of the Federal Rules of Civil Procedure.

### IV. Conclusion

As stated, Plaintiff conceded her negligence claims against both defendants, and those claims are therefore dismissed. Having fully considered the parties' submissions, the Court grant's Defendant JSU's motion for summary judgment with respect to punitive damages and intentional infliction of emotional distress/outrage. The Court denies JSU's motion with respect to Plaintiff's sexual harassment claim and takes the retaliation claim under advisement. Defendant Dean's motion for summary judgment is granted with respect to Title VII, § 1981, and the state law claims, but it is otherwise denied. Finally, in light of the Court's ruling on punitive damages, Plaintiff's Motion to Strike [37] can be dismissed as moot.

### SO ORDERED AND ADJUDGED.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 682411

---

          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Bombardier Capital, Inc. v. Royer Homes of Miss., Inc., Not Reported in F.Supp.2d (2006)

2006 WL 1328907
Only the Westlaw citation is currently available.
United States District Court,
S.D. Mississippi,
Southern Division.

BOMBARDIER CAPITAL, INC., Plaintiff

v.

ROYER HOMES OF MISSISSIPPI, INC., Larrye
Joe White and Patricia B. White, Defendants.

Civil Action No. 1:04cv884-
RHW.   |   May 15, 2006.

**Attorneys and Law Firms**

Cameron Cody Bell, Phelps Dunbar, LLP, Gulfport, MS,
Douglas C. Noble, Phelps Dunbar LLP, Jackson, MS, for
Plaintiff.

Joseph Reilly Morse, Reilly Morse, Attorney, Gulfport, MS,
for Defendants.

### *MEMORANDUM OPINION AND ORDER*
### *GRANTING SUMMARY JUDGMENT*
### *ON DEFENDANTS' COUNTERCLAIM*

ROBERT H. WALKER, United States Magistrate Judge.

**\*1** This case is before the Court on [37] motion for summary
judgment filed by Bombardier Capital, Inc., Plaintiff/
Counter Defendant (Bombardier), on the counterclaim filed
by Defendants/Counter Plaintiffs (collectively Royer). The
motion was filed February 28, 2006. Royer has filed no
response. The Court having carefully reviewed the matter
finds the motion well-taken.

### *FACTUAL BACKGROUND*
### *AND PROCEDURAL HISTORY*

This lawsuit arose out of long-standing financial dealings
between Bombardier Capital, Inc. (Bombardier), Royer
Homes of Mississippi, Inc. (Royer) and Larrye and Patricia
White. Bombardier provided inventory floor plan financing
for Royer's mobile home sales business. Larrye White and his
wife Patricia, the respective president and secretary/treasurer
of Royer, issued personal guaranties unconditionally

guaranteeing Royer's payment and performance of its
obligations to Bombardier under the loan documents by
which financing was provided. Royer began defaulting on its
obligations in the spring of 2004, which led to Bombardier's
cutting off Royer's credit line, and ultimately commencing
this lawsuit in December 2004.

Royer answered, denying any liability to Bombardier, and
asserting via counterclaim that (1) Bombardier "tortiously
interfered with [Royer's] business relationships with third
parties, including, but not limited to, manufacturers, retail
customers and others by falsely or in bad faith asserting
breaches of the loan documents and personal guarantees,
failing to permit timely cure of any alleged breaches, failure
to properly credit [Royer] with funds paid to [Bombardier],
and falsely and in bad faith accelerating the debts owed under
the loan documents;" (2) that Bombardier "breached and is
in default of its obligations under the loan documents and
as a result has caused [Royer] to lose sales and lose other
business opportunities;" and (3) that Bombardier committed
the tort of outrage by its "wrongfully [causing] to be
issued a Replevin, which was executed on [Royer] on the
Christmas holiday and caused federal marshals to surround
and impound [Royer's] personal premises and cause ... severe
embarrassment, humiliation and shame...." [1]

Following a bench trial on Bombardier's complaint March
16-17, 2005 and concluding March 22, 2005, the Court held
the loan documents and guaranties valid and enforceable,
and found Royer had defaulted on its obligations thereunder
which justified Bombardier's accelerating the account and
having the replevin issued. The Court allowed Royer 30
days within which to redeem the collateral, failing which
Bombardier would be entitled immediate possession of the
collateral, and to a judgment for the accelerated indebtedness.
On August 10, 2005, the Court certified the judgment entered
in favor of Bombardier pursuant to Rule 54(b), Fed.R.Civ.P.
Royer did not redeem the collateral, nor did it appeal the
judgment.

### *DISCUSSION*

#### *Summary Judgment Standard*

Summary judgment is appropriate where no genuine issue of
material fact remains to be decided and the moving party is
entitled to judgment as a matter of law.

Bombardier Capital, Inc. v. Royer Homes of Miss., Inc., Not Reported in F.Supp.2d (2006)

**\*2** Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Rule 56(e) provides in part:

When a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*

Fed.R.Civ.P. 56(e) (emphasis added). If a plaintiff lacks evidence sufficient to create a genuine issue of fact in support of a necessary element of his claim, then summary judgment is appropriate on that claim. *Hypes v. First Commerce Corp.,* 134 F .3d 721, 725 (5th Cir.1998). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Burfield v. Brown, Moore, & Flint, Inc.,* 51 F.3d 583, 588 (5th Cir.1995). The nonmovant is required to do more than simply show there is some metaphysical doubt as to the material facts. *Meinicke v. H & R Block of Houston,* 66 F.2d 77, 81 (5th Cir.1995. "If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law." *Vanderford v. Parker Hannifin Corp.,* 971 f. Supp. 1079, 1080 (N.D.Miss.1997).

The moving party must show the absence of a genuine issue of material fact by affidavit or other evidentiary materials. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 n. 2, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir.1986). For the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50, 106 S.Ct. At 2510-11 (1986). In this case, the March 2005 trial testimony satisfies this requirement.

**\*3** If the movant meets his burden by proving the absence of a genuine issue of material fact, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994), *citing Celotex,* 477 U.S. At 325, 106 S.Ct. At 2553-54. The nonmovant cannot discharge this burden by referring to the mere allegations or denials of his pleadings, but must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553; *Reese v. Anderson,* 926 F.2d 494, 498 (5th Cir.1991); Fed. R.Civ. P. 56(e). If the nonmovant fails to present evidence showing a genuine issue of material facts exists, "the motion for summary judgment must be granted." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

*Conclusion*

The Court finds the factual bases for Royer's tortious interference and/or breach of contract claims against Bombardier are the same as those Royer unsuccessfully asserted in its defense against Bombardier's claims. By its judgment in favor of Bombardier, the Court has adjudicated those facts against Royer. Royer did not appeal that judgment. With respect to Royer's claim for intentional infliction of emotional distress,[2] the Court has been presented no evidence of any of the elements of this tort with respect to Bombardier's conduct in lawfully pursuing the remedies available to it as a result of Royer's defaults. The Court finds Royer has failed to show the existence of any genuine

Bombardier Capital, Inc. v. Royer Homes of Miss., Inc., Not Reported in F.Supp.2d (2006)

issue of material fact as to any of the claims set forth in its counterclaim. It is therefore,

**ORDERED AND ADJUDGED,** that [37], the motion for summary judgment is granted, and the counterclaim is dismissed, this the 15th day of May, 2006.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1328907

Footnotes

1    The gist of this claim is that Bombardier knew Patricia White's mother was critically ill and dying when it demanded payment under the contractual arrangement between Bombardier and Royer. During her testimony at the March 2005 trial, Mrs. White repeatedly and emotionally spoke of her mother's illness and death.

2    The Mississippi equivalent of the "tort of outrage."

© 2015 Thomson Reuters. No claim to original U.S. Government Works.