IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ROBERT FRANKLIN AND SHANNON O'QUINN FRANKLIN,
EACH INDIVIDUALLY AND EACH ON BEHALF OF
LARRY D. MAYS, A MINOR CHILD  **PLAINTIFFS**

V.  **CIVIL ACTION NO. 5:15-cv-120 (DCB)(MTP)**

CLAIBORNE COUNTY, MISSISSIPPI; MARIO GRADY,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES;
CORY WEATHERSPOON, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITIES; SCOTT STEWART, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES; WILLIAM NEVELS, IN HIS
OFFICIAL AND INDIVIDUAL CAPACITIES; MICHAEL WELLS,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND
DOE DEFENDANTS 1-10  **DEFENDANTS**

**FIRST AMENDED COMPLAINT**
**(PLAINTIFFS REQUEST TRIAL BY JURY OF ALL PARTIES)**

COMES NOW Plaintiffs, Robert Franklin and Shannon O'Quinn Franklin, each individually and each on behalf of Larry D. Mays, a Minor Child (hereafter collectively "Plaintiffs"), by and through undersigned counsel and pursuant to the laws of the State of Mississippi and the Federal Rules of Civil Procedure and files this Complaint against Defendants Claiborne County, Mississippi, Mario Grady, in his official and individual capacities, Cory Weatherspoon, in his official and individual capacities; Scott Stewart, in his official and individual capacities; William Nevels, in his official and individual capacities; Michael Wells, in his official and individual capacities; and Doe Defendants 1-10 (collectively hereafter "Defendants"). In support thereof, Plaintiffs would show unto this Honorable Court the following:

1

# I.

## JURISDICTION AND VENUE

1. The Original Complaint in this matter was removed to this Court on or about December 11, 2015. [Docket No. 1] Plaintiffs assert claims and seek damages relative to the violation of Plaintiffs' civil rights by all Defendants, including Defendants herein.

# II.

## PARTIES

2. Plaintiff Robert Franklin is an adult resident citizen of Claiborne County, Mississippi who may be contacted by and through his undersigned attorney. Plaintiff Robert Franklin brings this action in an individual capacity and in a representative capacity on behalf of his minor child, Larry D. Mays.

3. Plaintiff Shannon O'Quinn Franklin is an adult resident citizen of Claiborne County, Mississippi who may be contacted by and through her undersigned attorney. Plaintiff Shannon O'Quinn Franklin brings this action in an individual capacity and in a representative capacity on behalf of her minor child, Larry D. Mays.

4. Defendant Claiborne County, Mississippi is a unit of government authorized under and by virtue of the laws of the State of Mississippi. Claiborne County, Mississippi may be served with process through the Claiborne County Board of Supervisors, Allen Burkes (District 1), Charlie Norrell, Sr. (District 2), Eddwin Smith (District 3), Ronald Shoulders (District 4) and Daniel Porter, Sr. (District 5) at 510 Market St., Port Gibson, MS 39150.

5. Defendant Mario Grady, upon information and belief is an adult resident citizen of Leflore County, Mississippi who may be served with process where found.

6. Defendant Cory Weatherspoon, upon information and belief is an adult resident citizen of Leflore County, Mississippi who may be served with process where found.

7. Defendant Scott Stewart, upon information and belief is an adult resident citizen of Leflore County, Mississippi who may be served with process where found.

8. Defendant William Nevels, upon information and belief is an adult resident citizen of Leflore County, Mississippi who may be served with process where found.

9. Defendant Michael Wells, upon information and belief is an adult resident citizen of Claiborne County, Mississippi who may be served with process where found.

10. Doe Defendants 1-10 are other individuals, persons, businesses, institutions, corporate persons or entities whose identities are unknown to the Plaintiffs at the filing of this

complaint, but who may be liable for all or part of the acts or omissions committed resulting in the subject incident herein and against whom Plaintiffs may seek recovery of damages.

## III.

## **NOTICE OF CLAIMS**

11. In correspondence dated February 9, 2015 the Plaintiffs, by and through counsel caused to be filed and delivered by certified U.S. mail to North Central Narcotics Task Force, ATTN: Chief Executive Officer, P.O. Box 1534, Greenwood, MS 38935, North Central Narcotics Task Force, ATTN: Scott Stewart, P.O. Box 1534, Greenwood, MS 38935, North Central Narcotics Task Force, ATTN: Cory Weatherspoon, P.O. Box 1534, Greenwood, MS 38935, North Central Narcotics Task Force, ATTN: William Nevels, P.O. Box 1534, Greenwood, MS 38935, North Central Narcotics Task Force, ATTN: Mario Grady, P.O. Box 1534, Greenwood, MS 38935 and Claiborne County Sheriff's Office, ATTN: Sheriff Marvin Lucas, ATTN: Chief Executive Officer, ATTN: Michael Wells, 410 Main Street, Port Gibson, MS 39150 a notice of claim letter regarding the act(s) and/or omission(s) set forth herein, pursuant to Miss. Code Ann. δ 11-46-11, 42 U.S.C. § 1983 and any and all other applicable state or federal statute(s) or constitutional provision(s), and/or any applicable state or federal common law cause(s) of action. A copy of this letter and certified returns of service is incorporate herein by referenced and were attached to the original complaint as "Exhibit A." To date, no response has been received. Plaintiffs submit that this notice of claims letter has been on file and these Defendants on notice at least Ninety-Five (95) days prior to filing the instant suit.

## IV.

## **FACTS**

12. Plaintiff Larry D. Mays (hereafter "Larry D. Mays") is a "vulnerable person" under the Mississippi Vulnerable Persons Act, codified in Miss. Code Ann. §§ 43-47-1, *et seq.* (hereafter "The MVP Act"). A "vulnerable person" is defined under Miss. Code Ann. § 43-47-5(q) as "a person, whether a minor or adult, whose ability to perform the normal activities of daily living or to provide for his or her own care or protection from abuse, neglect, exploitation or improper sexual contact is impaired due to a mental, emotional, physical or developmental disability or dysfunction, or brain damage or the infirmities of aging." Larry D. Mays suffered a severe brain injury in an automobile accident as an infant, and requires continual medical care. He has severe developmental and cognitive deficiencies and developmental disorders.

13. Larry D. Mays is protected under the MVP Act against abuse, neglect, or exploitation. Miss. Code Ann. § 43-47-19(1) states "It shall be unlawful for any person to abuse, neglect or exploit any vulnerable person". The term 'abuse' is defined under Miss. Code Ann. § 43-47-5(a) as "<u>the commission of a willful act, or the willful omission of the performance of a duty, which act or omission contributes, tends to contribute to, or results in the infliction of physical pain, injury or mental anguish on or to a vulnerable person, the unreasonable confinement of a vulnerable person</u>, or the willful deprivation by a caretaker of

3

services which are necessary to maintain the mental or physical health of a vulnerable person." (emphasis added)

14. Larry D. Mays, Shannon Franklin and Robert Franklin are protected under the 14th Amendment to the United States Constitution, which states "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." USCS Const. Amend. 14, § 1

15. On March 20, 2014, Larry D. Mays, Shannon Franklin and Robert Franklin was physically accosted by members of the North Central Narcotics Task Force[1] and the Claiborne County Sheriff's Department at their home in Port Gibson, Mississippi. Individuals wearing black masks entered Larry D. Mays' home, snatched Larry D. Mays out of his bed, threw him to the ground, put their feet/knees in his back and put a gun to his head. These individuals held Larry D. Mays, Shannon Franklin and Robert Franklin at gunpoint for an extended period of time, handcuffed Larry and twisted his arm. It appears these individuals were searching for criminal activity within the home, possibly involving Larry D. Mays' father Robert.

16. Plaintiffs Larry D. Mays and Shannon O'Quinn Franklin had not committed a crime, did not commit a crime that day, had no existing warrant out for their arrests, did not resist arrest and were never charged with a crime. Shannon O'Quinn Franklin was present and witnessed the incident. She states the individuals she saw accost her son and point a gun at her son's head were wearing black masks. Mrs. Franklin states that most of the individuals had white noses. Mr. Robert Franklin states that he saw one of the individuals, believed to be an African-American male, remove his mask at one point. Through investigation, it is believed Mario Grady, Cory Weatherspoon, Scott Stewart, William Nevels, Michael Wells and possibly others were the individuals who perpetrated these acts.

17. Mrs. Franklin states that she told the individuals that her son had special needs and that he needed his medicine to avoid having a seizure. Mrs. Franklin states that she begged the individuals to allow her son to take his seizure medication, but they refused. Immediately after the Task Force and Sheriff's Department left the scene, Larry D. Mays suffered a seizure. Larry D. Mays' medical and psychological condition immediately worsened, and has worsened over time. Larry D. Mays, Shannon Franklin and Robert Franklin were physically and emotionally harmed by the actions of the named defendants; Larry now undergoes additional medical and psychological treatment that was previously unnecessary. Larry D. Mays suffers seizures at a vastly increased rate, and his quality of life has been adversely affected by these incidents.

18. Upon information and belief, the Defendants recovered marijuana from the scene. Also upon information and belief, Robert Franklin was arrested and his charge resulted in no jail time being served. Meanwhile, the physical attack upon Larry D. Mays resulted in significant physical injuries and emotional distress to the Plaintiffs. The actions of the named

---

[1] By way of Order of Court, the North Central Narcotics Task Force is not an entity pursuant to Mississippi law, and was only formed through an interlocal agreement between various counties and cities. Because it is not a legal entity, and is no longer in existence, its joinder is neither possible nor necessary. However, Claiborne County, Mississippi is a proper Defendant pursuant to Mississippi law.

defendants were unprovoked and unjustified, as Larry D. Mays and Shannon O'Quinn Franklin had not committed a crime and was never charged with a crime. Larry D. Mays was denied his seizure medication by the named Defendants, at a time when it was critically necessary that he receive it.

19. The actions of the named defendants were unprovoked and unjustified, as Larry D. Mays had not committed a crime and was never charged with a crime.

20. Claimants are prepared to show by a preponderance of the evidence that the injuries sustained by the Plaintiffs were caused and/or contributed to the act(s) and/or omission(s) of Defendants herein and/or their agents/employees.

21. Defendants in this matter had affirmative duties to protect and safeguard Larry D. Mays and to provide him with necessary and proper medication and medical treatment while in their custody.

22. The act(s) and/or omission(s) of the Defendants (including employees of the aforementioned in their official capacities as well as other unknown individuals, entities, businesses, parent companies, corporations, and etc.) caused and/or contributed to the injuries sustained by the Plaintiffs.

23. The emotional and psychological trauma caused by the injuries sustained by Larry D. Mays directly and proximately affects all of the Plaintiffs herein.

24. Defendants (including employees of the aforementioned in their official capacities as well as other unknown entities, businesses, parent companies, corporations, and etc.) breached the standard of care owed to the Plaintiffs.

25. As a result of these act(s) and/or omission(s), the Plaintiffs seek to recover damages economic as well as other non-economic damages.

## V.

## **CLAIMS FOR RELIEF**

## **Violation of Civil Rights Pursuant to 42 U.S.C. § 1983**

### **(General Allegations)**

26. Plaintiffs re-allege and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

27. In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiffs of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States including, but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived

of life without due process of law; and c) the right not to be deprived of liberty without due process of law.

28. In violating Plaintiffs' rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law to set into motion a chain of events leading to the injuries sustained by the Plaintiffs. The acts and/or omissions of the Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

29. As a direct and proximate result of the violation of their constitutional rights by the Defendants, Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C §1983.

30. Title 42 U.S.C. § 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." *Jefferson v. City of Hazlehurst*, 936 F. Supp. 382, 386-387 (S.D. Miss. 1995)

31. To state a cause of action under Title 42 U.S.C. § 1983, the plaintiff must plead, and on summary judgment has the burden of showing by adequate and admissible evidence, seven elements. Firstly, the plaintiff must show that there was a clear and constitutional right in plaintiff. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Secondly, the plaintiff must show that there was a deprivation of that clear right, privilege or immunity secured to the plaintiff by the Constitution of the United States of America. *Siegert v. Gilley*, 500 U.S. 226, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) (the court must determine if plaintiff has identified a clear constitutional right in herself); *Baker v. McCollan*, 443 U.S. 137, 99 S. Ct. 2689, 2692, 61 L. Ed. 2d 433 (1979) ("inquiry in any 1983 suit … is whether the plaintiff has been deprived of a 'right secured by the Constitution and the laws'"). *See also Quives v. Campbell*, 934 F.2d 668, 670-71 (5th Cir. 1991) (summary judgment should be affirmed because plaintiff failed to state a constitutional claim); *Samaad v. Dallas*, 940 F.2d 925, 942 (5th Cir. 1991) (reversing summary judgment that denied qualified immunity defense where plaintiffs failed to state a constitutional violation); *White v. Taylor*, 959 F.2d 539, 545 (5th Cir. 1992) (in a 1983 action, the court must determine whether the contours of the plaintiff's rights are clearly established).

32. Thirdly, the plaintiff must show that the defendants acted under "color of State law." *Gomez v. Toledo*, 446 U.S. 635, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980). Fourthly, plaintiff must show that there exists a direct causal connection, *Canton v. Harris*, 489 U.S. 378, 387-388, 109 S. Ct. 1197, 1203-1205, 103 L. Ed. 2d 412 (1989), without intervening factors, between the deprivation and some injury to plaintiff. *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) (deprivation must be specifically identified and tied to the injury).

33. Fifthly, plaintiff needs to establish that the act or omission by the defendant was intentional or at least deliberately indifferent to the Constitutional or Federal law rights of the

plaintiff. *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (in order to state a cause of action for a due process violation under § 1983, plaintiff must establish that he was intentionally or recklessly deprived of the constitutionally protected interest); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir. 1992) (deprivation can result from tortious conduct exceeding mere negligence but not quite rising to the level of intentional, e.g., deliberate (or conscious) indifference, recklessness or gross negligence), reh'g granted and opinion vacated by *Doe v. Taylor Independent School District*, 987 F.2d 231 (5th Cir. 1993), on rehearing *Doe v. Taylor Independent School District*, 15 F.3d 443, 450 (5th Cir. 1994) (to state a cause of action under § 1983 … plaintiffs "must show that they have asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law"); *Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) (only where an act or omission reflects a deliberate or conscious choice by a municipality can a city be held liable for such acts or omissions under § 1983); *Doe v. Taylor Independent School District*, 15 F.3d 443, 453 (5th Cir. 1994) (a municipality or an individual to whom the municipality has delegated responsibility to directly supervise an employee is liable under § 1983 where the employee is supervised in a manner that manifests deliberate indifference); *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992) (deliberate indifference is the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents). *See also Salas v. Carpenter*, 980 F.2d 299, 307 (5th Cir. 1992) ("unintentional conduct more culpable than negligence may deny due process"). Sixthly, the plaintiff must show that she suffered actual injury. *Memphis Community School District v. Stachura*, 477 U.S. 299, 308, 106 S. Ct. 2537, 2543, 91 L. Ed. 2d 249 (1986) (where there is no injury present, no compensatory damages can be awarded). And finally, the plaintiff must prove damages as a proximate result of the injury. *Carey v. Piphus*, 435 U.S. 247, 264, 98 S. Ct. 1042, 1052, 55 L. Ed. 2d 252 (1986) (compensatory damages can be awarded where plaintiff has proved an actual injury caused by the denial of his constitutional rights).

34. Mississippi law states a plaintiff will prevail on an excessive force constitutional claim if they can show that: (1) that the officers' actions caused them injury; and (2) that the actions were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience. *City of Jackson v. Powell*, 917 So. 2d 59, 61 (Miss. 2005).

35. "The Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-1 *et seq*., is the exclusive remedy for filing a lawsuit against governmental entities. Miss. Code Ann. § 11-46-7(1). Although the MTCA waives sovereign immunity for tort actions, it also prescribes exemptions from this statutory waiver under which a governmental entity retains its sovereign immunity. Immunity under the MTCA protects the city and county from lawsuits arising out of the performance of a police officer's duties in law enforcement with respect to the alleged victim. However, the exemption is not designed to protect grossly negligent or intentional tortfeasors from liability where the fact that the victim is engaged in criminal activity has no relation to the transaction out of which liability arose. In order to prove that a victim is engaged

in criminal activity it must be shown that the criminal activity has some causal nexus to the wrongdoing of the tortfeasor." *City of Jackson v. Powell*, 917 So. 2d 59, 61 (Miss. 2005).

36. Miss. Code Ann. § 11-46-5(2) states "For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." In addition, Miss. Code Ann. § 11-46-7(2) states "An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense. "These statutes unambiguously state that an employee <u>can be found</u> to be acting outside the course and scope of employment if acting with <u>malice</u>." *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So.2d 584, 590 (Miss. 2001) and *Powell*, 917 So. 2d at 72-73. (emphasis added)

37. The Mississippi supreme court has analyzed cases in which officers were held to have acted in reckless disregard of the safety of others in other contexts. The common thread of these cases is "that the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *City of Jackson v. Lipsey*, 834 So.2d 687, 693 (Miss. 2003) (quoting *Maldonado v. Kelly*, 768 So.2d 906, 910-11 (Miss. 2000)).

38. Qualified immunity protects government officials who perform discretionary functions from liability "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) and *Gibson v. Rich*, 44 F.3d 274 (5th Cir. 1995). The qualified immunity analysis is a two-step process. First, a court must determine whether the plaintiff has alleged the violation of a constitutional right. *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995). Second, if the plaintiff has alleged a constitutional violation, the court must decide if the conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred. Id. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

39. "Modern immunity doctrine is the product of explicit judicial balancing of the usually adverse interests which are implicated in suits brought by private persons injured by the acts of public officials. On one side are the private desire to obtain redress for governmentally imposed injuries and the public interest in both punishment and deterrence [of official wrongdoing]. . . . Foremost among [the countervailing] interests is the public aim of shielding officials from liability so that they do not become overly cautious in the performance of their

duties." *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) and *Elliott v. Perez*, 751 F.2d 1472, 1476 (5th Cir. 1985).

40. "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579 (2d Cir.1949), cert. denied, 339 U.S. 949, 70 S. Ct. 803, 94 L. Ed. 1363 (1950).

41. In *Thompson v. Upshur County*, 245 F.3d 447 (5th Cir. 2001), the Fifth Circuit identified the standard for entitlement to qualified immunity. The court stated "The doctrine of qualified immunity served to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law. *Thompson*, 245 F.3d at 456; *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997); Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).

42. The first step in the qualified immunity analysis is to determine whether the plaintiff has alleged the violation of a clearly established federal constitutional (or federal statutory) right. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998); *Pierce*, 117 F.3d at 872. If the plaintiff does so, the Court must then assess whether the defendant's conduct was objectively reasonable in light of clearly established law. *Hare*, 135 F.3d at 326; *Pierce*, 117 F.3d at 872. Unlike the first step, the step two inquiry applies the law that was clearly established at the time of the alleged violation. To ensure that qualified immunity serves its intended purpose, it is of paramount import, during step two, to define "clearly established law" at the proper level of generality. *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039 97 L. Ed. 2d 523 (1987); *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998); *Pierce*, 117 F.3d at 872.

43. Because qualified immunity turns only upon the objective reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity. *Anderson*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523; *Pierce*, 117 F.3d at 871 n. 5.

44. Plaintiffs support their claims with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.

45. In the present case, the actions of the officers were malicious and beyond the degree of force necessary in the situation which they faced.

46. Further, force was applied for a period of time after Larry D. Mays, Shannon Franklin and Robert Franklin were subdued and handcuffed when they were apparently offering no resistance at all.

47. The officers were confronted with a situation where a special needs child with brain damage was resting in his bed at home. They were aware of his disability, or should have been aware of it. There was no indication that Larry D. Mays, Shannon Franklin and Robert Franklin were violent or aggressive toward them.

48. The blows dealt to Larry D. Mays, Shannon Franklin and Robert Franklin by the officers were grossly disproportionate to the lack of resistance that they offered. See generally. *United States v. Bigham*, 812 F.2d 943, 948 (5th Cir. 1987); *Shillingford v. Holmes*, 634 F.2d 263, 266 (5th Cir. 1981).

49. The force used by the Defendants in their attempted apprehension of Larry D. Mays, Shannon Franklin and Robert Franklin was excessive.

50. At the moment a gun was held to Larry D. Mays' head, he had committed no crime.

51. At the moment Larry D. Mays was denied his seizure medication, he had broken no law.

52. At the moment officers handcuffed Larry D. Mays, he was unarmed.

53. At the moment Larry D. Mays was pinned to the ground, he had complied with all orders.

54. During these incidents, the officers were not under a reasonable fear of grave bodily injury or death. Larry D. Mays, Shannon Franklin and Robert Franklin had clear constitutional rights. Defendants deprived Larry D. Mays, Shannon Franklin and Robert Franklin of the clear right, privilege or immunity secured to them by the U.S. Constitution. The acts of the Defendants were intentional and malicious. Larry D. Mays, Shannon Franklin and Robert Franklin was actually injured, physically and psychologically, as a result of the incidents described in the complaint. The injuries and damages of Larry D. Mays, Shannon Franklin and Robert Franklin are the direct and proximate result of the Defendants' actions on March 20, 2014.

55. These Defendants acted under color of law to deprive these Plaintiffs of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, namely the right to be free from unreasonable searches and seizures and the right not to be deprived of liberty without due process of law. As set forth in the Complaint, these Defendants entered the Plaintiffs' home and used excessive force to do so,

including but not limited to a physical attack, handcuffs and unlawful restraint of movement, which proximately caused and/or contributed to the damages sustained by the Plaintiffs. Defendants denied Larry D. Mays medication at a time when he critically needed it.

56. Plaintiffs undertook good faith efforts to ascertain the identity of the individuals who violated their civil rights on the dates and times in question, and despite the fact that they were wearing masks to disguise their identities were able to identify by name at least five (5) of the individuals who were present. Additionally, some of the identifying information is maintained within the sole possession of the Defendants themselves.

57. The Defendants' actions deprived Larry Mays of his constitutionally protected right to be free from unlawful searches and seizures.

58. The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

**Violation of Civil Rights Pursuant to 42 U.S.C. § 1983**

**(Failure to Implement Appropriate Policies, Customs and Practices)**

59. Plaintiffs re-allege and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

60. Defendant Claiborne County, Mississippi has demonstrated a long-standing official custom or policy of unequal application of law, disparate treatment and racism against minorities and persons of color, in violation of the Constitution.

61. According to the United States Census Bureau, Claiborne County, Mississippi has the third-highest percentage of African-American residents of any U.S. county, an 84% majority of the population. Located south of the area known as the Mississippi Delta, this area was long a center of cotton plantations and related agriculture.

62. Claiborne County was the center of a little-known but profound African-American civil rights movement and struggle during the middle of the 20th century. Following World War II and similar to other counties across the South, African Americans attempted unsuccessfully to control their wages and conditions. As the number of sharecroppers declined, African Americans then worked at the box factory or as day laborers and domestics. Joined by an increasing number of African Americans in the aspiring class, those with some economic independence, Reverend Eugene Spencer and others worked with whites to try to improve African American schools. In 1945, Claiborne County Training School (CCTS) remained overcrowded and underfunded. Attuned to the recent U.S. Supreme Court decisions that called for equalization of African American schools, local white voters feared outside pressure and approved a bond issue to improve the school in 1947.

63. At this point, Whites controlled African Americans' labor and kept them in a subordinate role. African Americans recall insults, exploitation, and a lack of power. To accomplish anything, they had to rely on the goodwill of whites and Port Gibson's white power structure. The school bond vote in 1947 was but one example of this. The local Lion's Club, whose membership consisted of white families tied through generations, was another example of how dominant whites controlled institutions and opportunities for African Americans. The Lion's Club frequently determined who taught at neighboring Alcorn College for African Americans and where funds were allocated in the city and county. The Claiborne County Sheriff's Department maintained control over law enforcement in the county throughout, and did so with a disparate treatment towards minorities and persons of color. Segregation was firmly entrenched.

64. In 1951, African Americans had organized and expanded the local branch of the NAACP and requested a charter from the national organization. At least seventy African Americans joined the organization. So before 1954, the year in which *Brown v. Board of Education, Topeka* was handed down from the U.S. Supreme Court, African Americans had begun to organize for their rights.

65. But in 1954, a local Citizens' Council was formed, and minorities and persons of color were harassed or fired from their jobs, and the Mississippi legislature passed more stringent rules about voter registration. Following the *Brown* decision came the infamous literacy tests in Claiborne County. White trustees purged the faculty at Alcorn College and appointed a new president, J. D. Boyd, who supported the white status quo. The NAACP and others helped to organize a boycott in 1966 and force changes in Alcorn College leadership, after the Voting Rights Act was passed by the U.S. Congress indicating that African Americans still lacked equal access to the franchise and economic opportunities. The response from Port Gibson whites to the boycott recalls the laments of white slaveholders after the Civil War. Shocked and angry, local whites blamed the new militancy on outside agitators and communists. Their anger was perpetrated upon the African American community by the Claiborne County Sheriff's Department and others.

66. The legacy of the civil rights movement in Claiborne County is one of polarization. While African Americans gained the right to vote, whites continued to preserve their dominance with the aid and assistance of Claiborne County's policies and customs. Some African Americans remained intimidated by the voting process because of white retaliation. When the U. S. Supreme Court demanded integrated schools, whites fled public schools and built private academies across the county. Port Gibson merchants filed a lawsuit against the NAACP for economic losses during the boycott, a case that remained in the court system until 1982, increasing the breach between African Americans and whites.

67. While some white moderates in Claiborne County may have refused to don white Klan robes or to actually set their dogs against African American children, yet and still they have never attempted to change the rigid white supremacy that governs the county. Nor did they even try to give school integration a chance or stand up for African American voting rights. White moderates may not have committed overt acts of violence, but nonetheless

tolerated covert acts of violence because they refused to accept African Americans as equals, actions that are simply a variation of white supremacy.

68. Defendant Claiborne County, Mississippi's long-standing, unconstitutional custom or policy of unequal application of law, disparate treatment and racism against minorities and persons of color created by the County was the proximate cause, in whole or in part, of the injuries and damages sustained by the Plaintiffs and is evidenced by the testimony and evidence in support of Plaintiffs' claims.

69. Defendants (including employees of the aforementioned in their official capacities as well as other unknown individuals, entities, businesses, parent companies, corporations, and etc.) implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that included, among other things, the routine use of excessive force against members of the community, the refusal to provide adequate medical care, disregard for minorities, persons of color and individuals with special needs and the willful ignorance as to complaints about processes and procedures utilized in investigations and lack of proper care.

70. The failure of all Defendants to adequately train and supervise their employees, agents and security personnel amount to deliberate indifference to the rights of the Plaintiff to be free from unreasonable seizures under the Fourth and Fourteenth Amendments to the Constitution of the United States.

71. In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiffs as alleged herein of certain constitutionally protected rights including, but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of life without due process of law; and c) the right not to be deprived of liberty without due process of law.

### **Negligence**

72. Plaintiffs re-allege and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

73. At the time and on the occasion in question, Defendants (including employees of the aforementioned in their official capacities as well as other unknown individuals, entities, businesses, parent companies, corporations, and etc.), individually, jointly, and severally, possessed a duty of reasonable and/or ordinary care while operating a narcotics task force and a sheriff's department in Mississippi.

74. Specifically, all Defendants owed a duty to the members of the general public entrusted to their care to maintain their safety, health and well-being, both physical and psychological.

75. The duty owed by all Defendants to the Plaintiffs, to use reasonable and/or ordinary care in operating a narcotics task force and a sheriff's department, included but was

not limited to affirmative duties to protect and safeguard members of the general public, to provide prompt medical care to members of the general public, to provide medication to members of the general public, to make reasonable efforts to keep members of the general public safe, to avoid actively harming members of the general public, to prevent injustice and abuse, to obey the laws of the State of Mississippi and the United States of America, to implement adequate and appropriate policies and procedures for the operation of the facility and to prevent abusive and illegal practices.

76. Defendants (including employees of the aforementioned in their official capacities as well as other unknown individuals, entities, businesses, parent companies, corporations, and etc.), individually, jointly, and severally, were negligent in the following particulars, including but not limited to:
  (a) failing to provide Larry D. Mays with prompt medical care;
  (b) failing to heed the warnings of Larry D. Mays's medical condition;
  (c) failing to heed the warnings of Larry D. Mays's parents regarding the nature of their son's medical conditions;
  (d) failing to prevent Larry D. Mays's injuries;
  (e) refusing to provide adequate medical care to members of the general public, including but not limited to Larry D. Mays;
  (f) engaging in conduct likely to cause physical, psychological and emotional harm to Larry D. Mays;
  (g) failing to supervise the conduct of its personnel;
  (h) failing to take proper corrective action when employee(s) took inappropriate and illegal actions against members of the general public; and
  (i) other acts of negligence as will be more fully shown at trial.

77. The above acts constitute common law negligence and negligence per se and were each a proximate cause of the occurrence in question. Further, the act(s) and/or omission(s) of the Defendants (including employees of the aforementioned in their official capacities as well as other unknown individuals, entities, businesses, parent companies, corporations, and etc.), individually, jointly, and severally, resulted in the Plaintiffs' damages.

78. As a result of these aforesaid acts, Plaintiffs suffered and continues to suffer severe, irreparable injuries.

## **Gross Negligence**

79. Plaintiffs re-allege and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

80. The actions of Defendants, when viewed objectively, involved an extreme degree of risk considering the probability and magnitude of the potential harm to Plaintiffs. Defendants had actual, subjective awareness of the risk, but nevertheless preceded with conscious indifference to the rights, safety or welfare of Plaintiffs herein and as such constitutes gross negligence (malice) as the term is defined under Mississippi law. As a result, Plaintiffs are entitled to the recovery of punitive damages.

### Negligent Infliction of Emotional Distress

81. Plaintiffs re-allege and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

82. The act(s) and/or omission(s) of the Defendants (including agents, employees and/or independent contractors of the aforementioned in their official capacities as well as other unknown entities, businesses, parent companies, corporations, and etc.), on the dates and times in question caused Plaintiffs severe emotional distress through their negligent conduct.

83. The negligent conduct perpetrated upon the Plaintiffs was awful, traumatic, and disturbing events, which has caused the Plaintiffs to suffer serious emotional anguish.

84. At all relevant times, the Plaintiffs were in the zone of danger as a result of the act(s) and/or omission(s) of the Defendants.

85. The act(s) and/or omission(s) of the aforementioned Defendants constitute a negligent infliction of emotional distress as defined under Mississippi law, and were each a proximate cause of the injuries of the Plaintiffs as well as the damages and losses sustained by the Plaintiffs.

## VI.

## DAMAGES

### ECONOMIC DAMAGES

86. Plaintiffs re-allege and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

87. As a result of the act(s) and/or omission(s) of these Defendants, Plaintiffs seek the recovery of any and all kinds of economic damages available under the law and incurred as a result of the injuries they sustained.

### NON-ECONOMIC DAMAGES

88. Plaintiffs re-allege and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

89. As a result of the act(s) and/or omission(s) of these Defendants, Plaintiffs seek recovery for certain non-economic damages which occurred as a result of the Defendants' negligent act(s) and/or omission(s); including, but not limited to: physical injuries, pain and suffering, severe mental pain and suffering, anguish, suffering, inconvenience, worry, emotional distress, loss of society and companionship, physical impairment, loss of the enjoyment of life, hedonic damages, loss of credit worthiness, medical or special damages, and

others, directly attributable to the occurrence made the basis of this lawsuit and directly attributable to their injuries and the harm they have sustained.

90. Plaintiffs have suffered out-of-pocket expenses which include travel expenses, attorneys' fees, costs of court, time from work, funeral expenses, nursing expenses, physical therapy expenses and other expenses. Accordingly, Plaintiffs seek all general, special, incidental and consequential damages as shall be proven at the time of trial, including exemplary, enhanced and trebled damages. Plaintiffs seek pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, a statutory rate of interest because of the delay in receiving the damages and also to avoid unjust enrichment to Defendants. Plaintiffs also seek post-judgment interest at the maximum rate allowed by law.

91. The amount of total damages suffered by Plaintiffs is significant and continuing in nature. Plaintiffs reserve the right to amend and state further with respect to their damages.

## PUNITIVE DAMAGES

92. Plaintiffs re-allege and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.
93. Pursuant to Miss. Code Ann. § 11-1-65, inasmuch as the conduct of Defendants herein constitutes a willful, wanton, egregious and reckless disregard for the rights and safety of the Plaintiffs, an award of punitive damages is appropriate and necessary under these facts.

## RIGHT TO AMEND PURSUANT TO FED. R. CIV. P. 15

94. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to name additional defendants should later facts establish that others are liable herein.

## JURY TRIAL DEMANDED

95. Plaintiffs demand a jury trial.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that upon final trial hereof they be entitled to take, have and recover, of and from said Defendants the above damages, including actual, compensatory, exemplary, pre-judgment interest, post-judgment interest, costs of Court, attorneys' fees, and for such other and further relief to which they may show themselves to be justly entitled.

Respectfully submitted this the 29th day of November, 2016.

**ROBERT FRANKLIN AND SHANNON O'QUINN FRANKLIN, EACH INDIVIDUALLY AND EACH ON BEHALF OF LARRY D. MAYS, A MINOR CHILD**

**Counsel for Plaintiffs:**

__ /s/ Thomas J. Bellinder, Esq. _____
Thomas J. Bellinder (MSB # 103115)
**BELLINDER LAW FIRM**
Pinnacle at Jackson Place
190 E. Capitol Street, Suite 460
Jackson, MS 39201
Phone: (601) 487-9340
Fax: (601) 265-1795
Email: Thomas.Bellinder@BellinderLawFirm.com

**CERTIFICATE OF SERVICE**

The undersigned counsel does hereby certify that a true and correct copy of the foregoing document has been filed via ECF, which should forward a copy to opposing counsel via electronic means to their usual place of business, to-wit:

Jessica I. Morris
Laura Rose
Lindsey O. Watson
Adams & Reese, LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS 39157

Thomas E. Whitfield, Jr.
Whitfield Law Group, PLLC
660 Lakeland East, Suite 200
Flowood, MS 39232

Daniel J. Griffith
Mary McKay Lasker
Jacks Griffith Luciano, PA
P.O. Box 1209
Cleveland, MS 38732

Michael S. Carr
Carr & Calderon
P.O. Box 1818
Cleveland, MS 38732

                        This the 29th day of November, 2016.
                        BY: __ /s/ Thomas J. Bellinder, Esq. _____